SANGER BROS. ET AL. V. G. W. COLBERT.

No. 7518.

1. **Sales by Insolvent Merchant.** — The law does not make it improper for an insolvent merchant to either transfer his property itself in discharge of a debt or to sell it for money and pay the debt with the money, or to do both. It only prohibits him from disposing of it "with the intent to delay," etc.

2. **Same — Charges Approved.** — Trial of right of property in a stock of goods seized under attachment and claimed by another creditor and at same time purchaser, claiming to have purchased without notice of insolvency of the defendant in attachment. See charges held fairly to explain the law, and rendering it proper to refuse additional instructions.

3. **Res Gestæ.** — A creditor bought the stock of his debtor, who was insolvent. He paid a fair difference between the value of the goods and his account. A witness was asked whether the debtor made any statements "at the time of the trade," etc.; to which the witness replied, "He said he intended to pay his debts with every dollar of it." The defendant then asked witness, "Was that before or after the money was paid?" Witness answered, "It was after the money was paid." *Held*, the testimony was competent; and while of itself it might be entitled to little weight, yet being followed by testimony that he had applied the money as he had stated, it might be of importance. Besides, it was admissible as res gestæ.

4. **Sales by Insolvent Debtor.** — If the sale by the insolvent debtor was made with sole purpose of paying his debts, that ends the case of an attack upon the sale. If made for reasonable value but with fraudulent purpose, such sale is voidable as to the purchaser upon showing that he had notice of the fraudulent intent of his immediate grantor, and the burden of proving such notice is upon the party attacking the sale.

APPEAL from Bell. Tried below before Hon. W. A. BLACKBURN. No statement is necessary.

*L. C. Alexander*, for appellants.—1. Where a creditor seeking a preference buys from an insolvent debtor by a surrender of his debt and payment of a relatively large sum in cash, with notice, the sale is fraudulent in law, and his intention to pay the cash to other creditors, or the fact that he does so, it not being a part of the contract that he should do so, is immaterial, and the admission of testimony of such intention or fact is manifestly calculated to mislead the jury.

A creditor may lawfully receive from a failing debtor in payment property reasonably proportioned in value to the amount of the debt; but if he receives property of greater value than the amount of the debt and pays the excess to the failing debtor, he aids the latter to place his property beyond the reach of his creditors, and the transfer will be set aside, not only to the extent of the excessive value, but as to all the property transferred. Brown v. Vaughan, 70 Texas, 49; Oppenheimer v. Halff & Bro., 68 Texas, 412; Harness Co. v. Schoelkopf & Co., 71 Texas, 423; Allen v. Carpenter, 66 Texas, 140; Elser v. Graber,

69 Texas, 226; Seligson v. Brown, 61 Texas, 182; Ellis v. Valentine, 65 Texas, 541.

2. The act of sale being consummated and ended by the transfer and payment of the money, what was done with the money and to whom paid could have no tendency to illustrate the issue whether there was a fraudulent sale, and the natural tendency of its admission must have been to prejudice the jury in favor of defendant by causing them to consider the transaction as meritorious.

No brief for appellee reached the Reporter.

HENRY, ASSOCIATE JUSTICE.—This was a suit for the trial of the right of property. The property having been levied upon by virtue of a writ of attachment sued out by the appellants against their debtor J. B. Dyess, Colbert, the appellee, claimed it, and the issue was as to whether or not a sale made of it to him by the debtor was fraudulent. The evidence showed that Dyess was a merchant, and that the debts of plaintiffs accrued before the sale by Dyess, the debtor, to Colbert, the claimant; that the writs of attachment were regularly issued and levied in the respective suits of plaintiffs against Dyess, and that judgments were rendered against him for the debts and foreclosure of the attachment liens on the property in controversy. It was shown that Dyess was at the time of the transfer insolvent; that he owed the plaintiffs, Sanger Bros., $1032, and Cameron, Castles & Storey $1763.05. Dyess testified, that he owed Colbert $1040; sundry local creditors, $2300; Austin Land Company, $800; Pool, $2300 or $2500; Blum, $1000 or over; Woodruff & Co., $390 or more; something to Noyes & Fish; and to his clerk, Doll Stone, $400; an aggregate indebtedness of more than $11,000, besides an indebtedness of $355 to Colbert, as testified by him, for which a lot was conveyed at the time of the sale and transfer of the goods.

His assets consisted of goods, the first cost of which was $4110, of the estimated value of $3000; notes and accounts to the amount of $3000, of unknown value, but which were given to Pool for a debt amounting to from $2000 to $2400; a tract of land of 63 acres, of value about $1200, the same mortgaged to the Austin Company, and conveyed to Stone; an interest in land in Louisiana worth $400, which he conveyed to his brother on the date of the transfer of the goods, October 11, on some alleged previous consideration, the aggregate being at most little more than one-half the liabilities. There is no evidence of his having any other property except two mules. The consideration for the sale of the goods to Colbert was the surrender of the note held by Colbert and about $2100 paid in cash.

The evidence is conflicting with regard to Colbert's notice of the insolvency of Dyess, and some suspicion is cast upon his being an actual

creditor of Dyess. But the evidence was sufficient upon both issues to support the finding of the jury in this court. We can not disturb the verdict merely because the jury may have attached more importance to the testimony of Colbert, an interested witness, than it may seem to us to deserve.

Appellants complain of the following charges given by the court:

"You are instructed in this case, that Dyess, although in failing circumstances, had the right to prefer some of his creditors over others and to convey his property in satisfaction of such preferred creditors' claims. And Colbert and other preferred creditors had the right to receive such property or its proceeds in payment of their debts, although they or he knew that the intention and effect of the conveyance was to hinder and delay other creditors of Dyess. But in such case the purchase must have been open, and no more property must have been taken by Colbert than was reasonably necessary to have paid his debt and the other preferred creditors' claims; and if at the time of the purchase no other preferred creditors were mentioned, then Colbert had no right to purchase more goods than were reasonably necessary to pay his own claim, if he knew, or by the use of ordinary diligence could have known, that Dyess was in failing circumstances, although the excess over his debt was, after the conveyance, paid to other creditors of Dyess.

"If Colbert was ignorant of the insolvency of Dyess, or of his failing condition, and had no reason to believe that such was his condition, and did not know or have any knowledge of such facts as were calculated to create a suspicion that the purpose of Dyess was to hinder, delay, or defraud his creditors (if you find that such was his intention), then he (Colbert) had the right to purchase said goods in satisfaction of his claim and pay the excess to Dyess, and the sale would be valid as to Colbert, whatever may have been the intention of Dyess, and although other creditors may have been defrauded, hindered, or delayed in the collection of their claims.

"Fraud is not to be presumed without evidence, but may be proved like any other fact, by direct or circumstantial evidence."

They also complain of the refusal of the following charges requested by them:

"The jury are instructed, that if said sale was fraudulent from the other evidence, no subsequent act of Dyess in the payment of debts can validate the same, nor can any such payments or declarations of intention to pay be considered in determining whether such sale was fraudulent or void.

"If you believe from the evidence, that at the time of the transfer of the goods by Dyess to the defendant G. W. Colbert, Dyess was insolvent, indebted in excess of his resources and far beyond his ability to pay, and that Colbert paid for said goods by the surrender of the

note referred to in the evidence, and in cash about $2100, and the goods were worth about said sum; and if you further believe from the evidence,.that Colbert had notice of such insolvent condition, if any, or by the use of such care and diligence as a person of ordinary prudence would use under the circumstances could have acquired such knowledge or notice—if you so believe, then said transfer was void, regardless of the actual motives or intentions of the parties; and if you so believe you will find for plaintiffs, and so say.

"If you believe from the evidence that Dyess was insolvent at the time of said transfer, and that Colbert paid over the note and money as testified, and that Colbert had notice of such insolvency, or might have acquired such notice by the use of such care as a man of ordinary prudence would use under the circumstances, and said goods were of the value or about the value of the amount of said note and money, in such case the sale would be void, notwithstanding any intention expressed by Dyess to pay his debts with the money, or the fact that he did appropriate it to the payment of debts; and in such case, if you so believe, you will find for the plaintiffs.

"Whatever has the effect to place property or the proceeds of a debtor beyond the reach of the creditors when such debtor is insolvent, is, as between said debtor and all persons participating therein with notice of the facts, either actual or imputed, fraudulent, without regard to the intention of the parties, and the conveyance having such effect is a conveyance with intent to defraud creditors."

Notwithstanding the insolvency of Dyess the sale made by him to Colbert was not void, unless, in the language of the statute, it was made "*with intent to delay, hinder, or defraud creditors.*" Rev. Stats., art. 2465.

As Colbert was insolvent, the only way he had to pay his debts was to dispose of his property for that purpose. The only proper use that he could have made of his property was to dispose of it for the benefit of his creditors. The law did not make it improper for him to either transfer the property itself in discharge of a debt or to sell it for money and pay the debt with the money, or to do both. It only prohibited him from disposing of it with the "intent to delay," etc.

Other assignments of error are to the effect that the court committed errors in the introduction of the evidence in the following respects:

"1.   In permitting a witness to testify, that at the time of the trade between Dyess and Colbert, Dyess said he intended to pay his debts with the money received of Colbert, it appearing that said declaration was made after the money was paid to Dyess and after the trade was consummated.

"2.   In permitting Dyess to testify, that he paid over the money received from Colbert on his debts, specifying such debts and their considerations; because there was no evidence as to any contract between

Colbert and Dyess as to the appropriation of the money, and such subsequent acts of Dyess had no tendency to illustrate the issues joined, and the evidence was calculated to mislead the jury.

"3.   In permitting Colbert to testify, that he bought the house which was conveyed to him by deed of October 11, 1888, because he wanted to go into the whisky business; that he ordered the whisky and countermanded the order; that he made the order in September, soon after he bought the house; because said testimony was irrelevant, and was calculated to mislead the jury.

"4.   In permitting J. B. Dyess to testify, that after he saw how he was going he countermanded orders for goods; that there were goods in the depot when he sold to Colbert; that he told Colbert the goods were there, and that he didn't feel that he had a right to them; that he (Dyess) had not paid for them, and that he gave to the persons who sold him the goods the reason why he countermanded the orders; because said testimony was illegal, irrelevant, and calculated to mislead the jury."

The evidence in regard to the statements made by Dyess in regard to the disposition he intended to make of the money paid him by Colbert appears in the bill of exceptions taken to its admission, as follows:

The defendant asked the witness whether Dyess made any statement "at the time of the trade," etc.; to which the witness replied, "He said he intended to pay his debts with it—every dollar of it." The defendant then asked, "Was that before or after the money was paid?" The witness answered, "It was after the money was paid."

The intent of Dyess in making the sale, with regard to his creditors and the disposition of the money paid him, was of controlling importance.   His own declarations made at the time tending to sustain the validity of his transaction, if standing alone and unsupported by other circumstances, would be entitled to very little consideration; but in connection with the other circumstance, that he did soon after pay out the money as he then said he intended to do, such evidence may be of importance.   The declarations having been made at the time when the money was paid, as fairly appears from the bill of exceptions, were admissible as a part of the res gestæ.

In the case of Sparks v. Dawson, 47 Texas, 138, this court expressed its disapprobation of charges in such cases as this containing the expression, "fraud can not be presumed, but must be proved," because it was said, that is not true without a qualification, as fraud may be proved as any other fact.   The use of the expression in the charge given in this case was unnecessary, but it was accompanied by a proper explanation, and we do not think it did any harm.

It is well settled by the decisions of this court, that Colbert, in his character of a creditor of Dyess, had the right to take property sufficient to pay his debt, but no more, even if his debtor with his knowl-

edge was insolvent and was intending to defraud his creditors. Brown v. Vaughan, 70 Texas, 49.   But as Colbert was a purchaser as well as a creditor, the right acquired by him to the property must be tested and controlled by his attitude as a purchaser only, disregarding the fact that he was at the same time a creditor and acting partly in that character in the very transaction.   For if the transaction can not be sustained as well as to his purchase as to his settlement of his debt, it must fall as to both, there being but one entire transaction.   The fact that he dealt also as a creditor may be considered in estimating the adequacy of the price paid for the property, and as a circumstance tending to show the intent of the debtor.   It does not appear to be contended that the fair value of the property sold to Colbert was not paid for it by him, considering his debt as well as the money paid by him.

We think all of the evidence above referred to was properly admitted as circumstances tending to show a lawful intent upon the part of Dyess in making the sale, and that the action of the court in giving and refusing charges upon that issue was correct, and that the judgment upon it in favor of Colbert can not be treated as not sufficiently supported by the evidence.

If the sale by the debtor was not with a fraudulent purpose, but was made with the sole purpose of paying his debts, that must end the case; because there can not be a fraudulent purchaser without a fraudulent vendor.   But if it be conceded that Dyess acted with a fraudulent purpose and that the law denounces the transaction as void as to him, it still remains to be determined whether or not it should be so considered as to Colbert, treated as a purchaser.   "He must be treated as a purchaser for a valuable consideration," and before the transaction can be avoided as to him it must appear from the evidence, "that he had notice of the fraudulent intent of his immediate grantor."   Rev. Stats., art. 2465.   The burden of proof to establish such notice is upon the party that attacks the transaction as in violation of the statute. Tillman v. Heller, 78 Texas, 601.   The evidence upon the issue was, to say the least, conflicting, and supports the judgment.

We do not think it was error to refuse to permit the plaintiffs to introduce evidence offered by them to the effect that "Pool was reputed to be insolvent," etc., and that "G. W. Colbert was reputed in the community where he lived to be of small means."

We have carefully considered all the assignments of error, and while we do not think it would serve any useful purpose for us to discuss them critically or in detail, it is proper to say, in conclusion, that we think the charge given by the court was a full and fair one, and made it unnecessary to give the charges requested by the plaintiffs and refused, even if they had included no objectionable matter.

The evidence admitted over the objections of the plaintiffs was such as it was proper for the jury to consider, and it can not be said by us to be insufficient to uphold the verdict.

The judgment is affirmed.

*Affirmed.*

Delivered May 20, 1892.