### D. S. CHESHER ET AL. v. W. C. CLAMP ET AL.
#### No. 1234.

1. **Verdict—Fraud—Notice.**—See facts held to support a verdict either against the charge of fraud in a transaction, or for want of notice on part of a purchaser from an insolvent debtor. The transaction was the exchange of land for the stock of a mercantile firm, a member of which was insolvent. The exchange was attacked by individual creditors.

2. **Good Faith—Charge.**—It was objected to the charge, "that an insolvent debtor has the right to sell or exchange all his property for other property which would be subject to the demands of his creditors when done in good faith," etc., for the reason that good faith was not defined. *Held*, that the charge was correct as far as it went, and could not be complained of in absence of an effort to supply the omission by asking such charge and its refusal by the court.

3. **Hinder and Delay—Fraud.**—If an act be lawful, an unfriendly motive will not render it unlawful. An insolvent debtor can lawfully pay or secure one or more of his creditors, and such payment does not become fraudulent from the intent to prefer and the consequent effect thereof upon those not preferred. This applies equally to partnership debts as to individual debts.

4. **Exchange of Property.**—If a debtor exchange merchandise for real estate of equal value and subject to the demands of creditors, it is impossible for the creditors to be injured by the transaction.

APPEAL from Williamson. Tried below before Hon. F. G. MORRIS.

*A. S. Fisher* and *E. A. Strickland*, for appellants, cited Weiseger v. Chisholm, 22 Texas, 670; Seligson & Co. v. Brown, 61 Texas, 182; Cox v. Miller, 54 Texas, 27; Thompson v. Shackelford, 6 Texas Civ. App., 121; Schmidt v. Noel, 4 Texas Civ. App., 91; Weiss Bros. v. Ditman, 4 Texas Civ. App., 35; Lees v. Wilkins 65 Texas, 298; Weaver v. Ashcroft, 50 Texas, 443; Wilcox v. Morgan, 6 Texas Civ. App., 478; Blum v. Simpson, 71 Texas, 630; Traylor v. Townsend, 61 Texas, 146; Cole v. Terrell, 71 Texas, 558; Holden v. McLauren, 60 Texas, 228; Phelps v. Curtis, 80 Ill., 112; Potter v. McDowell, 31 Mo., 62; Lawson v. Funk, 108 Ill., 502; Newburn v. Woods, 52 Mich., 610; Cleveland v. Williams, 29 Texas, 209; Robertson v. Leopold, 68 Texas, 259; Story on Sales, 296; Pars. on Con., 441; Humphries. v. Freeman, 22 Texas, 52; McVeigh v. Baxter, 82 Mo., 518; Loeb v. Flash, 65 Ala., 539; Allison v. Matthews, 3 Johns. (N. Y.), 235; Devoe v. Brandt,

53 N. Y., 463; Davis v. Burchard, 53 Wis., 494; Dawson v. Casey, 57 Mo., 118; Sloan v. Terry, 78 Mo., 623; Bush v. Collins, 35 Kas., 535; Devoe v. Skidder, 84 N. Y., 712; Blankenship & Blake v. Turner, 6 Texas Civ. App., 427.

*R. E. Brooks* and *R. A. John*, for appellees, cited Andrews v. Key, 77 Texas, 39; Ikard v. Thompson, 81 Texas, 293; Flanagan v. Boggess, 46 Texas, 335; Patton v. Gregory, 21 Texas, 522; Railway v. Cullers, 81 Texas, 394; Weaver v. Nugent, 72 Texas, 272; Railway v. Shearer, 1 Texas Civ. App., 350; Endick v. Endick, 61 Texas, 559; Ins. Co. v. Ende, 65 Texas, 118; Harrell v. Houston, 66 Texas, 278; Mayberg v. Steagall, 51 Texas, 354; Forest v. Miller, 42 Texas, 37; Weaver v. Ashcroft, 50 Texas, 424; Sweeney v. Conlee, 71 Texas, 546; Seligson v. Brown, 61 Texas, 182; Ellis v. Valentine, 65 Texas, 533; Rev. Stats., art. 2295.

KEY, ASSOCIATE JUSTICE.—January 10, 1893, W. C. Clamp and S. B. Chambers were engaged in a mercantile business in Georgetown, Texas, under the firm name of Clamp & Chambers, being equal partners therein, and J. Brewer, owned and resided upon 152½ acres of land near Georgetown. On said date Clamp & Chambers made a trade with said Brewer, in which Brewer agreed to convey to said Clamp & Chambers said 152½ acres of land at a valuation of $3000, and Clamp & Chambers agreed to pay said Brewer $1000 in money and transfer to him their entire stock of merchandise at invoice prices with 10 per cent additional, estimated to amount to $2000. And it was also agreed, that if the stock of merchandise amounted to more than $2000, Brewer was to make up the difference by letting Clamp & Chambers have certain other personal property, and if the stock of merchandise did not amount to $2000, Clamp & Chambers were to give Brewer a note for the difference, secured by a vendor's lien on the 152½ acres of land. At the time said agreement was made, Clamp & Chambers paid Brewer $10 and took his receipt therefor, reciting that it was in part payment for Brewer's farm. On the following day Clamp & Chambers, said Brewer, and one Barrett (employed by Brewer) commenced taking an inventory of the stock of goods. Brewer and wife executed a deed conveying said land to Clamp & Chambers, January 12, 1893; but before doing so, Brewer had notice that Clamp was indebted to appellants, and that they claimed to have a lien on the Clamp & Chambers stock of goods. Upon completion of the inventory the stock of merchandise fell short of $2000—its estimated value—$270, for which amount Clamp & Chambers executed their note to Brewer, as agreed upon. At the time in question the firm of Clamp & Chambers owed about $600, and Chambers agreed with Clamp that he would pay said indebtedness and Clamp's half of the $1000 that Clamp & Chambers had agreed to pay Brewer, in consideration of which Clamp, on January ——, 1893, executed his note to Chambers for $1000 and a deed

of trust on his interest in said 152½ acres of land conveyed by Brewer and wife to Clamp & Chambers. Said deed of trust is not copied in the record, and the evidence leaves it uncertain whether it was executed on the 12th or the 13th day of January. It and the deed from Brewer to Clamp & Chambers were filed for record on the morning of January 13, 1893. It appears that the exact amount of the firm's indebtedness was not known at the time the note was executed, and said amount was thereafter reduced by payments made out of collections by which Clamp's note to Chambers was entitled to be, and was credited with $257.95, leaving a balance of $742.05. At the time in question, Clamp was insolvent.

January 14, 1893, appellants, as plaintiffs, brought this suit against said Clamp, Chambers, Brewer, and R. W. Smith, alleging that Clamp had executed two promissory notes, payable to the order of said Smith, who had transferred same to appellants; that in the sale of said stock of goods and the mortgage of said land by Clamp, as aforesaid, it was intended by Clamp to hinder, delay, and defraud appellants; and that Brewer knew, or by the exercise of reasonable diligence might have known, of such unlawful purpose on Clamp's part; and appellants sued out an attachment which they caused to be levied upon part of the stock of goods. In their petition they asserted no contract lien on the goods, nor did they charge Chambers with any fraud, but admitted that the deed of trust executed by Clamp to secure him was made for value, and charged that it placed the land beyond the reach of Clamp's creditors; and at the trial the plaintiffs dismissed as to Chambers.

Defendant Smith answered by demurrer and denial. Defendants Clamp and Chambers answered by general demurrers, denials, and adopted the answer of their codefendant Brewer, except wherein he sought to recover against them. Defendant Brewer answered by general demurrer and denial, and specially answered, setting up good faith in his purchase, for a valuable consideration; want of notice of plaintiffs' claim until after said trade was closed; that he inquired as to the debts of said firm, and provision was made in said note for payment of all firm debts, which were paid, and that he knew nothing of any individual debts of W. C. Clamp, etc. By way of cross-action against plaintiffs, Brewer set up his purchase of said goods, their seizure by plaintiffs, and asked for judgment against plaintiffs for the value of said goods as seized, amounting to $715.59.

Trial resulted in verdict for plaintiffs against Clamp for $725.56, and for Brewer on his cross-action against plaintiff for $689.01. Judgment was rendered accordingly, and plaintiffs prosecute this appeal.

Appellants put in evidence the notes sued on, executed by Clamp, payable to the order of R. W. Smith, and by Smith indorsed in blank and delivered to appellants. It was agreed by the parties that the goods levied on under the plaintiffs' attachment were worth $646.97.

The contest in the case was on the issue of fraud; and, to have reached the verdict rendered, the jury must have concluded either

that there was no fraud on Clamp's part, or if his purpose was to defraud, that Brewer had no notice of such purpose, or of any facts or circumstances which in law would be tantamount to notice; and we can not hold that in these respects the verdict is not supported by evidence. On the latter phase of the case Brewer testified as follows: "I did not hear anything about how Clamp was going to secure Chambers for the money until after the attachment was levied; then Judge Glasscock told me. It was after a deed of trust had been executed. The deeds had been made and placed on the record. I knew of no intention on the part of Clamp & Chambers to place their land beyond reach of their creditors." He also testified, that the 152½ acres of land conveyed by him to Clamp & Chambers was worth $2250. It is true that there was other testimony tending to show that the land was not worth nearly so much; but the jury may have believed Brewer, and, so believing, they could have reached the conclusion that he, acting in good faith, conveyed to Clamp property subject to the payment of the latter's debts, and reasonably believed by both Clamp and Brewer to be equal in value to Clamp's interest in the stock of goods, without any notice on Brewer's part that Clamp had any intention to so dispose of the property as to render it unavailable to appellants; and under the charge of the court, and the law, if such were the facts, the verdict is correct. In fact, the jury may have concluded that the land was worth as much as the goods. Brewer took the goods at a valuation of $1730. It is reasonably certain from the testimony (see Barrett's evidence) that half in value of the stock of goods was levied on and sold under the attachment sued out by appellants, and it was agreed at the trial that the goods so seized and sold were at the time of seizure worth $646.97. According to this agreement, and the testimony of Barrett, to the effect that the goods seized under the attachment were worth more than those left in the store, the entire stock was not worth more than $1293.94; and according to the testimony of Whitton, the tax assessor, the land was worth $1200, while, as before stated, Brewer testified that it was worth $2250.

This disposes of the assignment of error that assails the verdict. Several assignments of error are addressed to the charge of the court, and these will now be considered.

The third paragraph of the charge reads as follows: "An insolvent debtor has a right to sell or exchange all his property for other property which would be subject to the demands of his creditors, when done in good faith, in the belief that he has acquired thereby as valuable property, subject to his creditors' demands, as that with which he may have parted."

Appellants complain of this charge because it does not explain what is meant by "good faith." It is well settled, as a general rule, that when a charge is correct as far as it goes, and is not calculated to mislead the jury, a mere omission or defect therein will not avail the complaining party, unless he has asked and the court refused a charge

supplying the omission, which was not done in this case. Endick v. Endick, 61 Texas, 559; Harrell v. Houston, 66 Texas, 278; Weaver v. Nugent, 72 Texas, 272. If appellants desired any further definition or explanation of good faith, they should have asked a special charge covering the supposed defect.

By the fourth paragraph of the charge, the jury were instructed that a member of a partnership has a right to sell or mortgage his property in payment, or to secure the payment, of his share of the partnership debts, if he uses no more of his property for such purposes than is reasonably sufficient, even though such use of his property might be intended by him to, and might, defeat his individual creditors in the collection of their debts. This charge is complained of as being unsound in law and prejudicial to appellants.

In Ellis v. Valentine & Son, 65 Texas, 532, the words "hinder or delay," as used in our statute of frauds, are discussed, and the conclusion reached that they are not used in their popular sense; and that if the act complained of be lawful, then, though an unfriendly motive may actuate the doer, the act will not be fraudulent. We make the following pertinent quotation from the opinion in that case: "The acquisition of a lien on a part or the whole of an insolvent's property, to secure a debt, necessarily has the effect to hinder another creditor in the enforcement of the payment of a debt due to him by a sale of the entire interest in the property on which the lien is given; but if the lien be to secure a bona fide debt, it is valid, even though the debtor gave it with intent to secure to the favored creditor an advantage over other creditors, and thus to hinder, delay, or even to defeat the collection of their debts. This is so simply because the property is devoted to a lawful purpose, and while withdrawn from one or more creditors, there is no fraud in so doing, for it is lawful to pay any debt, or to secure its payment, unless there be some law in force looking to the distribution of an insolvent's estate, without preferences. Every payment of a debt by a person unable to pay all his debts, whether the payment be made in money or property, tends, in a popular sense, to hinder or delay, or it may be even to defeat, other creditors in the collection of their debts, the extent of the effect, whether to hinder, delay, or to defeat, depending on the amount of indebtedness and value of the debtor's property; but it has never been held that a payment, either with money or property, by an insolvent debtor, in the absence of a law declaring preferences invalid, was within the meaning of the law, to hinder, delay, or defraud other creditors. What it is lawful to do can not become unlawful by reason of the fact that it is done through a motive, or with an intent, not friendly to all creditors; a hindrance or delay which does not operate as a fraud upon other creditors is not that prohibited by law. Every debtor has the legal right to pay one or more of his just debts with any money or property he has, though thereby he withdraws from the reach of other creditors property which they might subject to the payment of their debts,

equally just, as has every creditor the legal right to so receive pay-
ment, and the right of neither is affected by the fact that the debtor is
insolvent." See also Haas v. Kraus, 86 Texas, 687, where this doc-
trine is reaffirmed. These cases support the legal proposition an-
nounced in the charge under consideration.

Under assignments of error addressed to the seventh paragraph of
the charge, it is contended, that although Brewer did not pay for the
goods in money or negotiable paper, but exchanged land for them,
still, Clamp being insolvent, it was Brewer's duty to see that the con-
sideration delivered by him to Clamp was applied to the payment of
Clamp's debts; and that, having failed to do so, half the goods were
subject to appellants' attachment for their debt against Clamp. In
support of this argument, appellants cite Seligson & Co. v. Brown, 61
Texas, 180. It is there held, that the trial court erred in charging the
jury that a debtor in failing circumstances may dispose of his property
for a valuable consideration, and place it beyond the reach of his cred-
itors, provided he intends to use the money received for it in payment
of his debts. On that subject the case is apparently in conflict with
the opinion in the later case of Sanger Bros. v. Colbert, 84 Texas, 668.
But, aside from such conflict, Seligson & Co. v. Brown does not support
appellants' contention. In that case the property alleged to have been
fraudulently conveyed was paid for with negotiable notes; and the
maker of a negotiable instrument not being subject to garnishment
(Willis v. Heath, 75 Texas, 124), the consideration was as completely
withdrawn from the reach of creditors as though it had been paid in
money; and the opinion points out the distinction, and intimates that
if that case had involved a mere exchange of property, the ruling
would have been different.

If the debtor's assets be changed from merchandise to real estate of
equal value and subject to the demands of creditors, it is impossible
for the latter to have been injured. They can proceed against the land
as well as they could against the merchandise. The debtor can by sale
place his merchandise beyond the reach of creditors just as easily as
he can his land, and can conceal it much more easily. Appellants'
position on this question is not believed to be sound, and therefore we
can not sustain it.

We also agree with the trial court that Clamp, though insolvent, as
he had the right in good faith to exchange his assets for other property
subject to the demands of his creditors, could make such exchange,
although the property so obtained was not worth as much as that with
which he parted, if he in fact believed it was. Such belief would
negative any purpose to defraud.

The same question is presented in the objection to the fifth para-
graph of the charge; and, for the reason just stated, the objection is
overruled.

The sixth assignment of error complains of the eighth paragraph of
the charge, and the proposition under the assignment asserts that a

partner has no more legal right to incumber or dispose of his partnership property to defeat and defraud his individual creditors than he has to defeat and defraud his partnership creditors. The proposition is correct; but the charge does not assert that a partner, or any other debtor, has a right to defraud any creditor, whether individual or partnership. In so far as the rights of unsecured creditors are concerned, the true doctrine is that a debtor, when he uses only such an amount of property as is necessary to pay or secure the particular debt, may discriminate among his creditors and prefer one over others, whether the preferred debt be an individual or partnership debt, and although one result of such preference may be to hinder or delay, or even defeat, other creditors in the collection of their debts. Wiggins v. Blackshear, 86 Texas, 665; Ellis v. Valentine & Son, supra. The charge in question is based upon this principle; and it instructed the jury that if Clamp made the trade with Brewer, believing that he was obtaining property worth as much as that with which he parted, and intending to mortgage it to Chambers to secure him for the payment of Clamp's part of the partnership debts of Clamp & Chambers, and in fact mortgaged it for no more than he believed he would owe Chambers, such conduct and purpose on Clamp's part would not be fraudulent, although one result thereof might be to defeat individual creditors of Clamp. This was a proper application of the principle to a phase of the case presented in the evidence.

In so far as the special charges asked by appellants and refused by the court correctly stated rules of law applicable to the case, they were covered by the court's charge, and were therefore properly refused.

Our conclusions both of fact and law are stated in this opinion; and having considered all the questions presented in appellants' brief, and found no ground for reversal, the judgment will be affirmed.

*Affirmed.*

Delivered April 10, 1895.