### JAMES v. LASCO LAUNDRY SUPPLY CO.
#### et al.
#### No. 13170.

Court of Civil Appeals of Texas. Fort Worth.

May 24, 1935.

Rehearing Denied July 12, 1935.

T. B. Coffield, of Bowie, for appellant.

Homer B. Latham, of Bowie, for appellees.

DUNKLIN, Chief Justice.

Miss B. M. James instituted this suit against the New Method Laundry Company, a private corporation, which, for convenience, will hereinafter be referred to as the "laundry company," and the Lasco Laundry Supply Company, also a private corporation, which, for convenience, will hereinafter be referred to as the "supply company." The suit against the laundry company was for debt evidenced by its promissory note of date July 21, 1933, in the principal sum of $4,400, secured by a chattel mortgage, which the plaintiff also sought to foreclose. The supply company was made a defendant upon allegations that it had purchased the property

covered by plaintiff's mortgage at sheriff's sale, acting under an execution issued on a judgment theretofore rendered in favor of the supply company against the laundry company, who is now in possession of the property. It was further alleged that the chattel mortgage which plaintiff sought to foreclose was executed prior to the sale by the sheriff and knowledge of which was brought home to the supply company, its agents and attorneys, and by reason of those facts plaintiff's mortgage is superior to the title claimed by the supply company under and by virtue of the execution sale.

In reply to plaintiff's suit, the supply company alleged that the judgment on which the execution was issued was recovered against the laundry company on valid debts evidenced by promissory notes and open account, aggregating the sum of $468.02, and that the amount realized from the sale of the property under the execution had been credited on the judgment in favor of the supply company against the laundry company; that the laundry company is still indebted to the supply company for the deficiency in the judgment remaining unpaid, and also on eight $25 notes with interest.

It was further alleged that before the plaintiff's mortgage was executed the supply company notified the laundry company and also T. R. Coffield, plaintiff's agent and representative, that unless the debt owing to the supply company was paid that company would take legal steps to enforce payment and that after such notice the laundry company executed to the plaintiff the chattel mortgage she is seeking to foreclose, with the purpose on the part of James Chapman, its president, and T. R. Coffield, its secretary and treasurer, to defraud the creditors of the laundry company, and particularly the supply company, by reason of which the mortgage was null and void and the supply company prayed for its cancellation as a cloud upon its title, acquired at the execution sale.

The supply company further pleaded that the $4,400 note sued on by the plaintiff was executed to take the place of two prior notes, one in the principal sum of $2,000, and another in the principal sum of $1,500, theretofore executed by the laundry company to plaintiff and indorsed by James Chapman, president, T. R. Coffield, secretary and treasurer, W. E. Ditto, and C. W. Coffield, all officers of the laundry company, but the said notes were never in fact canceled or surrendered, and are still held by the plaintiff as evidencing a valid indebtedness owing to the plaintiff, and that in all of those transactions the plaintiff was represented by T. R. Coffield as her duly authorized agent and attorney.

The laundry company filed an answer acknowledging the execution of the note and mortgage alleged in plaintiff's petition, but made no defense thereto, nor to the cross-action of the supply company.

On the trial other issues presented by further pleadings of the parties were all eliminated with their consent, and need not be noticed.

The trial was before a jury and the following is the special issue submitted to them with their finding thereon:

"Do you find from a preponderance of the evidence that the execution of the chattel mortgage was fraudulent?

"Answer: Yes.

"In connection with the foregoing special issue you are instructed that a debtor, whether solvent or insolvent, may lawfully execute a chattel mortgage for the sole purpose of securing an honest debt, and that a chattel mortgage so executed is not fraudulent; you are further instructed that it is not lawful for an insolvent debtor to execute a chattel mortgage to any person for the object of aiding the debtor to cover up its property or the proceeds thereof for the benefit of such debtor and to the prejudice of its other creditors and a chattel mortgage so executed is fraudulent."

No exception was made to that issue by either party and no other special issue was submitted or requested. Judgment was rendered in favor of plaintiff against the laundry company for the amount sued for by her, and in favor of the supply company as against her for cancellation of her mortgage and recovery against her of title to the property covered by her mortgage, which the court further decreed had become vested in the supply company under the execution sale.

The record shows that with the exception of a delivery truck on which the two Coffields held a mortgage, plaintiff's mortgage covered all the equipment used by the laundry company in transacting its business, and all of which was purchased by the supply company at the sale under execution for a sum considerably less than its market value. The plaintiff was a niece of T. R. Coffield. All her earnings

as a teacher had been sent to him from Fort Worth to lend for her as he might deem to be to her best interests, and, acting in that capacity as her agent and representative, he made the two original loans to the laundry company, one for $2,000 and one for $1,500 both of which were indorsed by himself and C. W. Coffield, James Chapman, and W. E. Ditto, all of whom were directors of the laundry company. Those directors owned all the capital stock, amounting to a total of $8,000, in equal amounts. T. R. Coffield was secretary-treasurer, James Chapman, president, and C. W. Coffield, brother of T. R. Coffield, vice president.

The note and mortgage sued on by plaintiff were executed for the purpose of securing to plaintiff payment of the same debt owing to plaintiff, evidenced by the two former notes, for the respective principals of $2,000 and $1,500, with interest thereon, and also for taxes accrued on the property. Those two notes were not canceled, but a pencil notation thereon indicates they were renewed, and they are still held by T. R. Coffield as the agent of plaintiff.

The debt which ripened into the judgment in favor of the supply company was evidenced by twenty-one notes of the laundry company in the sum of $25 each, dated April 1, 1932, payable monthly, and executed to cover a balance due the supply company on a running account for supplies extending over a period of some two years prior to date of their execution.

■ About one week before the execution of plaintiff's note and mortgage, counsel for the supply company addressed a letter to the laundry company threatening legal proceedings unless payment be made of the debt owing to the supply company, also another letter of like import about one week later, and on the day the mortgage was filed for registration. Those letters were offered in support of defendants' cross-action. We believe they were properly admitted in evidence and the assignments of error to their admission are overruled.

■ In further support of its cross-action the supply company introduced in evidence testimony of the tax assessor showing tax assessments against some of the directors of the laundry company, who voted in favor of executing the note and mortgage sued on by plaintiff, also evidence of other property owned by them,

subject to execution. Plaintiff objected to such evidence on the grounds that same was immaterial to the issues involved and tending to excite prejudice and bias against plaintiff.

The point is made by counsel for the supply company that evidence showing that the indorsers on the former notes were financially able to pay those notes was a circumstance tending to support defendants' allegations that those indorsers executed plaintiff's note and mortgage with intent to defraud other creditors of the laundry company and particularly the supply company. While it is true, as announced in 20 Tex. Juri. § 151, page 303, and many authorities, a wide latitude is allowed in the introduction of evidence to establish fraud, and it is not necessary that the circumstances relied on should be of conclusive weight, yet that rule has its reasonable limitations, and the majority believe that the evidence referred to above comes within those limitations. Any possible bearing the evidence could have had on that issue was entirely too remote, and besides it was upon a collateral issue, to wit, the solvency or insolvency, on which a vast amount of evidence would have been admissible, such as indebtedness owing, due dates thereof, homestead exemptions, etc., all of which would have served to divert the minds of the jurors from the issues to be determined by them, to say nothing of probable bias in favor of the supply company.

The majority believe that the rule announced in 20 Tex. Juri. § 154, p. 508, that the general financial condition of a grantor in a deed alleged to have been made with intent to defraud his creditors may be inquired into, did not warrant the admission of evidence to show that the directors of the corporation owned property sufficient to pay the former notes indorsed by them individually and in lieu of which the note and mortgage in controversy were executed. The issue to be determined was whether the corporation through them executed the mortgage with intent to defraud the creditors of the corporation and not whether their intent was to defraud their own individual creditors. They were not indebted to the supply company.

In Sanger Bros. v. Colbert, 84 Tex. 668, 19 S. W. 863, 865, the issue made was whether or not a sale made by an insolvent debtor to Colbert was for the purpose of defrauding creditors of the debtor. The

evidence showed that at the time of the sale the seller owed Colbert a debt and that he had other unsecured creditors, including one Pool. In the opinion in that case the following was said: "We do not think that it was error to refuse to permit the plaintiffs to introduce evidence offered by them to the effect that 'Pool was reputed to be insolvent,' etc., and that 'G. W. Colbert was reputed in the community where he lived to be of small means.'"

■ More objectionable still, and for the same reasons, was the testimony of a delivery truck driver for the laundry company that the officers of the laundry company were given their laundry service at one-half the charges made for the same service to other patrons.

■ We concur with the contention by the supply company that since T. R. Coffield was the agent of plaintiff with full authority to lend her money on such terms as he might believe to be to her best interest, any notice to him of intent on the part of the directors of the supply company to defraud the creditors of the laundry company by the transactions in controversy here and especially any participation by him in such fraudulent intent would be chargeable to plaintiff. 2 Tex. Juri. § 158, p. 158, § 162, p. 570; Irvine v. Grady, 85 Tex. 120, 19 S. W. 1028; Allen v. Garrison. 92 Tex. 546, 50 S. W. 335; American Nat. Bank v. Cruger, 91 Tex. 446, 44 S. W. 278.

■ Appellee has cited McCormick v. Cornell & Wardlaw (Tex. Civ. App.) 193 S. W. 1083; Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802; 10 Tex. Juri. pp. 938–940, pp. 957–960; 20 Tex. Juri. § 74, p. 431, to support the contention that since the evidence showed that the directors of the laundry company would be benefited by the mortgage to plaintiff, in that they would thereby escape liability on their personal indorsements of the notes for which the note and mortgage in controversy was executed, in connection with other facts, such as kinship of the two Coffields to plaintiff, inclusion of the entire assets of the laundry company, etc., the judgment should be affirmed, at all events, under the rule announced in those authorities.

In 20 Tex. Juri. p. 434, the following was said: "It is settled by a long line of decisions that a creditor may receive payment of an honest debt in property of his debtor, though he knows at the time that the debtor's intent in making the payment is to prefer him and to place the property beyond the reach of other creditors, and that the debtor is prompted in making such preference by motives of friendship. This rule is, of course, contingent on the fact that no more property is taken than is reasonably necessary to pay the claim, and that the creditor takes the property for the sole purpose of securing his debt and not for the object of aiding the debtor to cover up the property or the proceeds thereof for the benefit of the debtor and to the prejudice of other creditors."

That announcement is followed by the following from Haas v. Kraus, 86 Tex. 687, 27 S. W. 256, 257:

"The moving or primary purpose of a debtor, in paying to a creditor a debt by conveying to him property, or in mortgaging property to secure a debt due to him, may be to prevent some other creditor from subjecting it to the payment of a sum due to him; but this, within the meaning of the law, will not render the conveyance or mortgage fraudulent as to such creditor, if his purpose is solely to have payment or security for the sum actually due."

The other authorities cited seem to be in accord with those announcements.

The alleged intent on the part of the directors of the laundry company to defraud its creditors by the execution of plaintiff's note and mortgage was the gravamen of the cross-action, and under the authorities cited, and all the facts and circumstances in evidence, we believe that issue was for determination by the jury and could not be withdrawn from them and determined by the court, as a matter of law. And this is also an answer to appellant's complaint of the court's refusal to direct a verdict in her favor.

For the errors noted, the judgment of the trial court is reversed and the cause remanded.