**PAN AMERICAN PETROLEUM CORPO-RATION and Socony Mobil Oil Company, Inc., Appellants,**

v.

**VERDE OIL COMPANY, Inc., et al., Appellees.**

**No. 23095.**

United States Court of Appeals
Fifth Circuit.

Oct. 25, 1966.

**462**

R. T. Wilkinson, Jr., Houston, Tex., Carl H. King, Tulsa, Okl., Chas. F. Potter, Tyler, Tex., Roy L. Merrill, Houston, Tex., Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, Tex., of counsel for appellants.

Gordon R. Wellborn, Henderson, Tex., Robert B. Payne, Thomas G. Crouch, Dallas, Tex., for appellees.

Before WISDOM, BELL and AINSWORTH, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This litigation stems from the "slant hole" oil scandal in East Texas. Appellants recovered a judgment against H. L. Long for oil produced from their adjoining leases by deviated wells surfaced on a lease owned by Long.[1] This appeal arises out of a subsequent suit brought by appellants in aid of the collection of their judgment against Long. Long is a party defendant in something of a nominal capacity. The essence of the suit is an effort to set aside a conveyance of oil properties from Long to appellee Verde Oil Company as having been made with the intent to defraud Long's creditors, and to subject the property to the previous judgment of appellants. The District Court denied recovery. We affirm.

## I.

The District Court found, after a nonjury trial, that Long made the conveyance in question for several purposes, one of which was the desire and intent to delay, hinder and defraud his creditors, including appellants. The court also found that Verde did not know of such fraudulent intent on the part of Long and this much is now conceded by appellants. The court then found that the evidence failed to establish that at the time of the conveyance Verde had knowledge of facts or circumstances sufficient to put a reasonably prudent person on inquiry as to such fraudulent intent on the part of Long. This latter finding is the basis of the single question presented. Did the court err in concluding that the facts or circumstances known to Verde were insufficient to require inquiry on its part as to Long's intention to defraud

---

1. Long did not appeal. However, Southwestern Life Insurance Company, a codefendant by virtue of loan and production payment transactions with Long, did appeal. See Pan American Petroleum Corporation v. Long, 5 Cir., 1964, 340 F.2d 211.

his creditors? Stated differently, did Verde have constructive notice that the conveyance to it was made by Long with intent to delay, hinder or defraud Long's creditors within the meaning of Art. 3996, R.C.S., Texas?[2]

The attack of appellants on the conveyance was two-pronged in the District Court. In addition to the claim that the conveyance was made with intent to defraud creditors in violation of Art. 3996, supra, appellants also contended that the conveyance was void under Art. 4997, R.C.S., Texas, as having been made for an insufficient consideration. The District Court found, however, that the consideration was adequate and no appeal is taken from that finding. Additionally, no appeal is taken from the finding that the conveyance was made by Long with intent to defraud his creditors. Therefore the question presented will be considered in light of these two facts: Verde paid Long an adequate consideration for the properties, and Long made the conveyance with the intent to defraud his creditors.

## II.

In early 1962 the Attorney General, the Department of Public Safety and the Railroad Commission of Texas instituted investigations to ascertain the validity of charges that deviated or slanted wells existed in the East Texas oil field. The charges and investigations received wide publicity in the news media. Mr. Long was prominently mentioned as being involved in the slanting activity. One of his employees was killed by an investigator in the course of the investigation. His leases were under the surveillance of state investigators. Mr. Swafford negotiated the purchase from Mr. Long. He was the organizer and president of Verde. He had not previously known Long although they had been joint owners, with a mutual acquaintance, of a tract of land near Dallas.

Mr. Swafford knew of the slant hole publicity and of the accusations against Mr. Long. The conveyance in question was made on July 18, 1962. Two civil suits were filed against Mr. Long a few days earlier, seeking damages for oil allegedly siphoned from leases of others. These suits had also received wide publicity. One was the suit of appellant's out of which the judgment forming the basis for the present suit is based. Mr. Swafford stated that he did not know of this suit. It involved the Long's Willie Starr lease. The other suit was brought by Humble Oil and Refining Company against Long and involved Long's Mary Smith "B" lease. Mr. Swafford stated that he knew of this suit. These leases were not among the properties conveyed to Verde.

Long was indebted at the time the slant hole controversy broke to Southwestern Life Insurance Company. Production payments from the Willie Starr lease were pledged to pay out the loan. He then conveyed other oil properties to the insurance company under a deed of trust as additional security for his indebtedness. The conveyance with which we are concerned is the assignment by Mr. and Mrs. Long of their interests in these same properties, subject to the outstanding deed of trust. Neither the Willie Starr or the Mary Smith "B" leases are involved. A few days before the July 18 sale to Verde, the property of Mr. and Mrs. Long had been partitioned. The proof does not show that Verde had knowledge of this fact. Mr. and Mrs.

---

2. Art. 3996, R.C.S.:
"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, every suit commenced, or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers, or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

Long made separate assignments of their respective interests to Verde. Verde paid a total of $30,000 in cash for the assignments, and, as stated, the finding by the District Court that this was an adequate consideration is not contested.

It would serve no useful purpose to detail the other conveyances of real and personal property made by Mr. Long, mainly for cash or notes, during the periods approximating four months before and after July 18, 1962. There is no proof that Verde, or its president, Mr. Swafford, who had the sole dealings with Long for Verde, knew of these other conveyances.

The facts and circumstances which tend to serve as a basis of notice to Verde was the publicity involving Mr. Long, the Humble suit, and the fact that Mr. Long was in something of a hurry to close the transaction with Verde. He had been unable to sell his equity in these properties although he had made an effort to do so. His lawyer had also been unable to find a purchaser. Long testified that he badly needed funds for medical expenses in connection with the illness of his son who had suffered a nervous breakdown because of the adverse publicity involving his father. He also was preparing to defend himself against possible criminal charges, and in the civil suits.

Verde borrowed the purchase price from a bank in which Mr. Long was a stockholder. It is urged that this shows notice. The fact was that the loan was made to Mr. Swafford and his partner Peterson on Mr. Peterson's financial statement. It is true that they had not previously dealt with the bank. Appellants also urge that the title examination made for Verde was cursory but there is other evidence that it was adequate. The proof was that a full title examination would have cost approximately $10,000. It is urged that that investigation of the properties made by Mr. Swafford was negligent but there is proof from which it may be inferred that the inspection was sufficient. A full survey to ascertain the facts as to deviation would have equaled the purchase price and taken as long as two months.

Mr. Swafford testified that he knew of Long's difficulties in the slant hole investigation, and of the Humble suit. He testified that his suspicion of Mr. Long was aroused by the haste and that he felt that some of the wells being purchased were deviated and that he did not ask Mr. Long about this, or whether he was afraid that his creditors would make large claims against him. He simply took a chance. He was hoping that he obtained a bargain in view of the depressed value of the Long properties under the circumstances, and that he would be successful in clearing any deviation problem with the proper authorities.

### III.

■■ The law of Texas is clear in cases of this kind. A creditor of a transferor may successfully attack a conveyance by showing actual knowledge on the part of the purchaser of facts or circumstances sufficient to put a reasonably prudent person upon inquiry, which, by the use of diligence, will lead to knowledge of the intent on the part of the transferor to delay, hinder or defraud his creditors. There is no duty to exercise any diligence until the purchaser has such knowledge, and good faith on the part of the transferor may be assumed by the purchaser. Mere suspicion is not sufficient, and the circumstances or facts must be such as, by the use of proper diligence, will lead to a knowledge of the fraudulent intent. See 26 Tex.Jur.2d., §§ 4–27, pp. 324–340. Wofford v. Farmer, 1897, 90 Tex. 651, 40 S.W. 788; Houston & T. C. Ry. Co. v. Shirley, 1895, 89 Tex. 95, 31 S.W. 291.

■ The burden of proof was on appellants to show that the facts or circumstances were such as would put Verde on inquiry, and that due inquiry would have led to knowledge of Mr. Long's fraudulent intent. See Sanger v. Colbert, 1892, 84 Tex. 668, 19 S.W. 863, where the court said:

"But if it be conceded that Dyess acted with a fraudulent purpose, and

that the law denounces the transaction as void as to him, it still remains to be determined whether or not it should be so considered as to Colbert, treated as a purchaser. 'He must be treated as a purchaser for a valuable consideration,' and, before the transaction can be avoided as to him, it must appear from the evidence 'that he had notice of the fraudulent intent of his immediate grantor.' Rev.St. art. 2465. The burden of proof to establish such notice is upon the party that attacks the transaction as in violation of the statute. Tillman v. Heller, 78 Tex. [597], 601, 14 S.W.Rep. 700 [11 L.R.A. 628]. The evidence upon the issue was, to say the least, conflicting, and supports the judgment."

The underlying facts in this case are largely undisputed. The real issue is whether the court's conclusion that appellants failed in their proof is warranted. We do not approach the matter de novo so as to substitute our own view for that of the District Court.

Verde knew through Mr. Swafford that Long was prominently mentioned as being involved in the slant hole scandal. He knew that at least one oil company had sued Long for damages on account of an alleged deviation. He knew that Long was anxious to sell the properties in question. There was no proof that he knew that Long was selling any of his other assets. There was no proof that Long was insolvent at the time. His oil properties were depressed in value but there was no proof as to his financial status otherwise. The proof was that the consideration paid for the properties in question was adequate. The purchase price paid the Longs was borrowed from a bank in which Long was a stockholder but there is no proof that the loan was not in order and fully legitimate. There was no secrecy surrounding the transaction.

The proof, in sum, might have warranted a finding that the conveyance should be set aside but that is not the test. The test is whether the court erred

in holding that the proof was insufficient to set aside the conveyance. On balance the question is close. Having in mind, however, the Texas rules, supra, that Swafford could assume good faith on the part of Long, and that appellants had the burden of proving notice to Verde of Long's fraudulent intent, we conclude that the court did not so err. Cf. Belt v. Texas Co., Tex.Civ.App., 1947, 204 S.W. 2d 653; Wofford v. Farmer, supra.

Affirmed.