TEXAS & NEW ORLEANS RAILROAD COMPANY v. LOUIS ECHOLS.

Delivered April 29, 1897.

**1. Master and Servant—Injury to Servant—Liability of Master.**

A railroad company is liable for an injury to an employe free from contributory negligence, caused by the fall of a stack of railroad ties left in a dangerous condition, if its servants and agents, charged with the duty of keeping the premises in a safe condition, knew or could have known of the dangerous condition of such stack in time to remove the danger.

**2. Same—Same—Misdirection of Superintendent—Effect.**

The misdirection of the superintendent in charge of the work of removing a stack of railroad ties, to leave such stack at the time of quitting work in a condition in which it is liable to topple over and fall on employes subsequently engaged in work about the pile, renders the company liable to an employe injured by the fall of the ties.

**3. Fellow-Servants—Railroad Laborers.**

A night crew engaged in loading railroad ties from a stack on cars on one railroad track are not fellow-servants with another crew engaged during the daytime in unloading ties from cars on another track on the opposite side of the stack, and placing them on the stack.

**4. Assignment of Error—Defective.**

An assignment of error to a charge of the court which contains several distinct propositions of law is bad, where it does not point out the error complained of.

**5. Charge of Court—Safe Premises—Use of "Plight."**

An instruction in an action for personal injuries to an employe which clearly submits to the jury the issue as to whether or not the premises where plaintiff was injured were reasonably safe is not objectionable as assuming that the premises were dangerous because the word "plight" is used in referring to them.

**6. Same—Inference Not Warranted by Language Used.**

The jury was not left to infer that the court thought the defect or danger existed, where it is charged that plaintiff could not recover, "if * * * the jury believe that the alleged defect or danger * * * was a risk assumed by him, or in other words, that such defect or danger was a risk ordinarily incident to his service, or one of which he knew or by the exercise of ordinary care in the discharge of his duties would have known."

**7. Personal Injuries—Verdict—Excessiveness.**

See the opinion for a statement of circumstances attending the injury of a railroad laborer, under which it is held that a verdict for $11,000 in his favor is not so large as to authorize the court to substitute its judgment for that of the jury, and reduce it.

APPEAL from Liberty. Tried below before Hon. L. B. HIGHTOWER.

*Baker, Botts, Baker & Lovett* and *S. R. Perryman,* for appellant.—The crew that appellee worked in and the crew that worked at night in pull-

ing down the ties were fellow-servants under our statutes. Railway v. Echols, 27 S. W. Rep., 60; Railway v. Warner, 35 S. W. Rep., 364; Railway v. Whitaker, 33 S. W. Rep., 716.

*Ewing & Ring* and *H. F. Fisher*, for appellee.—1. Defendant failed of its duty to furnish plaintiff with a reasonably safe place at which to work. Railway v. Smith, 76 Texas, 616; Wood's Mast. and Serv., secs. 330, 335; Railway v. Ward, 18 U. S. App., 688; Railway v. Bond, 20 S. W. Rep., 930; Zintek v. Stimson Mills Co., 32 Pac. Rep., 997; Railway v. Echols, 25 S. W. Rep., 1089; McCray v. Railway, 34 S. W. Rep., 95.

2. The failure to obviate the danger, after it ought by reasonable diligence to have been discovered, was actionable negligence. Railway v. Lyde, 57 Texas, 509; Railway v. Templeton, 87 Texas, 47; Railway v. Holm, 21 S. W. Rep., 942; Wood's Mast. and Serv., sec. 389.

3. The personal negligence of the vice-principal, in misdirecting the work, was actionable negligence. Railway v. Williams, 75 Texas, 4; 2 Thomp. Law of Neg., p. 974, sec. 5; Acts 22d Leg., p. 25, set forth in Sup. Sayles' Civ. Stats., art. 2430f; Sweeney v. Railway, 84 Texas, 433; Railway v. Johnson, 83 Texas, 629; Palmer v. Railway, 49 N. W. Rep., 613; Zintek v. Stimson Mills Co., 32 Pac. Rep., 997; Schroeder v. Railway, 18 S. W. Rep., 1094.

4. The negligence of the night crew was the actionable negligence of agents and not fellow-servants. Railway v. Warner, 35 S. W. Rep., 365; Sup. Sayles' Civ. Stats., art. 2430f, citing the fellow-servant act.

GARRETT, CHIEF JUSTICE.—Appellee brought this suit against the appellant to recover damages for personal injuries received by him while at work in the employment of appellant from the falling of a remnant stack of railroad ties.

This is the second appeal in the case. Upon the first appeal this court affirmed the judgment of the court below in favor of the appellee for the alleged negligence of the company in failing to provide the appellee with a reasonably safe place to work by not adopting proper rules for the conduct of the work. 25 S. W. Rep., 1087. Upon writ of error the Supreme Court reversed the judgment of this court and of the District Court, holding that the work to be done was not of such a nature as to require the company to make and enforce extra rules for its performance. 87 Texas, 339.

Upon the last trial in the District Court, the appellee based his case, as at the first, upon the failure of the company to maintain for him a reasonably safe place at which to work, alleging that the unsafeness of the premises consisted of a partially depleted stack of ties left in a condition so dangerous that it was liable to fall and do injury, but the unsafe condition of the stack of ties was alleged to have been the result of acts of negligence of a different character, which may be stated, as has been done in the brief of appellee, as presenting issues upon the following particulars: (1) of negligent misdirection of the labor by appellant's agent

in that behalf; (2) of concurrent negligence of the servants in the night crew, as agents of the appellant, who contributed to produce the danger; and (3) of negligence of appellant's authorized agent in failing to obviate the danger after he had discovered it, or after he had opportunity to discover it, and would have done so by the exercise of reasonable diligence.

The appellant answered by a general denial, including a general plea that the injuries, if any, were not caused by any negligence on its part, but were owing to the negligence, carelessness, fault, and want of care of the appellee. A trial by jury resulted in a verdict in favor of the appellee for $11,000.

*Conclusions of Fact.*—Louis Echols, the appellee, received the injuries complained of on March 3, 1892, while engaged at work in the employment of the appellant at its creosote works in Harris County. These works were for the purpose of treating railroad ties with creosote. There was a spur track from the main track of the railroad to the creosote works, running east and west, on to which the cars loaded with the ties were run. About twenty feet south of the spur track was another track called the dinkey track, which was parallel to the spur track and extended into the creosoting cylinders.

It was the work of a crew of laborers to which the appellee belonged to unload the ties from the cars on the spur track and stack them between the two tracks. The ties were stacked in a right line to the tracks from one to the other, commencing at the dinkey track, to within two or three feet of the spur track. They were sawed ties 8 feet long and squared 6x8 inches. They were piled in tiers straight upon each other to the height of 8 feet. There was a space of two or three feet between the stacks. A different crew commencing at the dinkey track took the ties down from the stacks and loaded then on the trucks on the dinkey track on which they were run into the cylinders for treatment.

The crew to which the appellee belonged worked during the daytime. They commenced work at 7 o'clock in the morning, and stopped at 6 o'clock in the evening. The crew that loaded the dinkey trucks was called the night crew. These men commenced work at 7 o'clock in the evening, and worked until 6 o'clock in the morning. The crew in which appellee worked was working under the personal direction and control of a foreman named John Mullane, while E. A. Fenn had the general superintendence, direction, and control of the work and premises.

On the morning that the appellee was hurt he went with his crew, at the direction of Mullane, who was present with them, to unload a car that was standing on the spur. It was necessary for the men to move the car from where it was standing to a place further east, as there was no room to stack the ties opposite the car as it stood. The appellee took hold of the car on the south side between it and the stacks of ties, and while with the crew he was pushing it along, with his face toward the east and his side to the stacks of ties on the south, a remnant of a stack of ties, consisting of four or five tiers, jarred by the rolling car, fell upon

him and broke his right leg and injured him otherwise. The remnant of the stack of ties that fell upon the appellee had been left standing by the night crew when they quit work that morning.

There were about 200 stacks of ties along the track where appellee was pushing the car. They stood close together, about two or three feet apart, and on the side of the spur track presented the appearance of a solid front eight feet high, and obstructed the vision so that appellee, who was moving eastward along the track, could not have seen that there was a depleted stack or remnant among them until he reached the space next to it. On the morning of the accident, and before it happened, Mullane, the foreman of the crew, passed along the south side of the stacks in plain view, and within a few feet of the remnant stack, and might have seen it if he had looked.

Fenn gave general instructions to the night crew about their work, as to how to take down the ties and how to leave remnants. His instructions were that if four or five tiers were standing safe they could leave them as they were. It was not the duty of appellee to throw down the remnant stacks and clear the premises before commencing the regular work in the morning, unless specially directed to do so.

Giving effect to the verdict of the jury, which is supported by the evidence, we conclude that the remnant of ties was negligently left standing in a condition in which they were liable to topple over and fall upon and hurt the men moving the car, and rendered the premises for the time for that reason not a safe place to work; that the appellant's superintendent Fenn was negligent in directing that a remnant of four or five tiers in a stack should be left standing when the night crew quit work; that the night crew were negligent in doing so; that the foreman Mullane either discovered or by ordinary diligence would have discovered the dangerous condition of the ties before the men went to work to move the car and in time to have prevented the injury; and that appellee was in the exercise of due care and was guilty of no negligence that may have contributed to the accident.

As stated in appellee's brief, the facts with reference to his injuries and the measure of damages were as follows: The ties fell upon him, "striking him in the dorsal region and on the back or side of his head, and also crushing and breaking his leg, bruising it in many places, and lacerating the muscles, tissues, and flesh, and tearing away large pieces of skin, so that at the time of the trial (three and a half years after the injury) dead bone was still working out of the wound, which was then open, and the leg was partially stiffened, devoid of strength, and somewhat shorter than the other leg, disabling him for life; whereby he had been compelled to remain in the hospital for about four months, and to suffer great mental and physical pain, and to lose his earnings since the injury, which the evidence showed were formerly of the value of $1.50 per day, and also to incur liability for medicine and medical attention in the sum of $100, and also to lose the benefit of his future earning power, which appeared to be practically destroyed, he being an uneducated man,

dependent wholly upon manual labor for his support, and at the time of and before the injury, able-bodied and healthy, sober and industrious, and then 46 years of age."

*Conclusions of Law.*—It was the duty of the railroad company to provide a safe place for its servants to perform their work, and to that end to exercise ordinary diligence. This duty extended also to the maintenance of the premises in a reasonably safe condition. Since it was shown that the remnant stack of ties was liable to topple over and fall upon the men while at work, and injure them, the dangerous condition in which it was rendered the premises unsafe. The appellant would not be liable for a mere temporary unsafe condition of which it had no notice or by the exercise of ordinary diligence would not have had, but if by the exercise of such care its servants and agents charged with the duty of keeping the premises in a safe condition knew or would have known of the dangerous condition in which the remnant stack of ties was left, in time to have removed the danger, and failed to do so, the company would be liable.

It is also true that, if the appellant's superintendent of the work, in directing the men how it should be done, so misdirected and instructed them with regard to the manner in which, while taking down the stacks to load the ties on the dinkey trucks, such remnant stacks as there might be when the time to quit work arrived should be left, that the condition in which they were left, in obedience to such misdirection, rendered them liable to topple over and fall, and the premises on that account dangerous, the company would be liable.

Again, if the crew were not the fellow-servants of the appellee, and negligently left the remnant stack in a dangerous condition, the company would be liable for the injury resulting from their negligence. The falling of the tiers is evidence of the fact, under the circumstances, that the stack was left in a dangerous condition. The risk can not be said to have been one which the appellee assumed when he accepted the employment, because it was the result of a failure of duty on the part of the company. If it had been the duty of the appellee, without further direction, to throw down the remnant stacks and clear the premises when he went to work in the morning, clearly he would not be entitled to recover; but, as found by the jury, such was not his duty, unless specially instructed to do so by the foreman. At the time he was injured he was, in obedience to an order from the foreman, pushing a carload of ties into position to be unloaded, with no independent duty devolving upon him to inspect the premises to see if they needed clearing and putting in a safe condition. The facts show that he did not contribute to the injury by any negligent act or omission of duty on his part. As far as he could see the stacks were all standing intact and firm. They presented a solid front to the spur track along which he was pushing the car. The distance between the stacks was so small that he could not have seen the dangerous condition of the remnant stack until he reached a point nearly

opposite it and not then without looking in a different direction from that in which his work lay. No danger confronted him.

The night crew were not the fellow-servants of the appellee. They do not come within the test prescribed by the statute. Rev. Stats., art. 4560g. While the grade of employment may be said to have been the same, they were not working together at the same time and place, nor to a common purpose. The purpose contemplated by the statute is of an immediate and not ulterior purpose. It might as well be said that the train crew in charge of the train that carried the ties and placed them on the spur track were working to a common purpose with the crew that unloaded and stacked them, in the purpose to have them treated with creosote, as that appellee's crew were fellow-servants of the dinkey track crew; and in the same manner might it be reasoned that the men who cut the timber were working to a common purpose with the tracklayers. It seems that the purpose here, within the meaning of the statute, is that of unloading and stacking the ties ready for the crew that took them down and loaded them onto the dinkey trucks. But all of the conditions of the test must be met. Were they working together at the same time and place?

It is true that "at" may indicate nearness only in point of time and place; but again the train crew furnishes an illustration. They reach nearness in point of place when they shove the loaded car onto the spur track, and may do so in point of time when the crew to unload the car take it and commence their work. Certainly these two crews would not be fellow-servants. There is a distinct line drawn between the time of the work of the crew on the spur track and the dinkey crew, and one almost as distinct as to place. The intent of the law is to relieve the master from liability only when the servants are brought into such contact with each other that they might see the danger and presently prevent it. They are thus made careful for each other only to the extent of acts presently done, and not those done by servants distant in point of time or place, of which they have had no opportunity to know.

Our conclusion is that the appellant is liable on either of the three contentions upon which its negligence in failing to maintain the premises in a safe condition is predicated.

It remains to pass upon some of the assignments of error in the appellant's brief not disposed of by what has already been said. The fifth and sixth assignments complain of error in the charge of the court as follows:

"5. The court erred in the following paragraph of its charge to the jury: 'If then the jury believe from the evidence that the depleted stack of ties, in the plight they were on the occasion in question, rendered the premises not reasonably safe, then if the jury further believe that such unsafe condition of the premises was occasioned by negligence of defendant's vice-principal in that behalf, in misdirecting the employes as to the manner in which the work was to be done, and that but for such negligence the injury to appellee would not have happened, or if the jury

believe that such unsafeness existed and was occasioned by negligence of defendant's employes in the course of their employment, and that such employes were not working together with the appellee at the same time to a common purpose, under the immediate direction or control, and that but for such negligence the alleged injury would not have happened; or if the jury believe that such unsafeness of the premises as is above supposed to have existed was brought about by the negligent acts or omissions of employes who were appellee's fellow-servants as elsewhere defined, but that an agent of the defendant in that behalf, charged with the duty of seeing that the premises were maintained in a reasonably safe condition, knew of such supposed unsafeness or by ordinary diligence would have discovered it in time to have obviated danger therefrom, and through want of ordinary care, failed to do so, and that but for such failure the injury to plaintiff would not have happened, let the verdict be for the plaintiff unless the jury shall find for defendant under instructions hereinafter or elsewhere given.'

"6: The court erred in the following paragraph of its charge to the jury: 'An employe assumes such risks as are ordinarily incident to the service he undertakes, and such others as he knows of, or by ordinary care in the discharge of his duties would have known of. But the negligence of the employer is not one of the assumed risks, unless the employe knows of such increased risk, or by ordinary care would have known it. If, with this explanation, the jury believe that the alleged defect or danger complained of by appellee was a risk assumed by him; or in other words, that such defect or danger was a risk ordinarily incident to his service, or one of which he knew or by the exercise of ordinary care in the discharge of his duties, would have known, then he can not recover.' "

Neither of the foregoing assignments are supported by propositions.

Appellee objects to our consideration of the fifth assignment, because the charge complained of contains several distinct propositions of law and the assignment does not point out the error complained of. The objection is apparently well taken. Investment Co. v. McClellan, 86 Texas, 180; Lemp v. Armengal, 86 Texas, 694; and other authorities cited by appellee.

But while the appellant has made no proposition developing the objections to the fifth charge, there is a statement under it which raises the objection to it that the court throughout the charge assumed that the condition of the depleted stack of ties which fell upon and injured appellee rendered the premises dangerous; that the use of the word "plight" in the paragraph indicated to the jury that the court thought that the stack of ties was in a dangerous condition, for that the universally accepted meaning of the word is a bad condition. It has also filed a printed argument in which further objections to the charge under this assignment are urged.

We think the assignment is bad, and should not be considered at all, because the charge complained of presents in fact the appellee's whole case to the jury, and the three issues of particular negligence upon which

the negligence alleged against the appellant in failing to maintain the premises in a safe condition were based; but as it might be said that it presents a question of error running through the charge in an assumption that the premises were not in a safe condition by the use of the word "plight," we express the opinion that the objection is not good, because the charge clearly submits the issue to the jury as to whether or not the premises were reasonably safe. And again, the word "plight" does not universally convey the meaning contended for by the appellant. In common parlance now it has departed greatly from the signification indicated by the derivation of the word, and the jury was not probably caused by its use to believe that the court meant that the stack of ties was in a dangerous condition.

It is objected to the sixth paragraph of the charge that the court again uses language that would naturally leave the jury to infer that the court thought the premises were rendered dangerous by the ties being left in the condition they were at the time of injury to appellee; that the jury is told that if they believe that the alleged defect or danger complained of by plaintiff was a risk assumed by him; or in other words, that such defect or danger was a risk ordinarily incident to its service, or one of which he knew or by the exercise of ordinary care in the discharge of his duties would have known, then he can not recover. The instruction is not obnoxious to the objection. The language is hypothetical as to the fact of negligence vel non, and clearly defines the law to the jury.

We do not pass on the sufficiency of the answer to present the defense of contributory negligence.

The amount of damages awarded is not so large as to authorize this court to substitute its judgment for that of the jury and reduce it. The judgment of the court below is affirmed.

*Affirmed.*

---

### ADDITIONAL CONCLUSIONS OF FACT.

#### May 20, 1897.

GARRETT, CHIEF JUSTICE.—In response to the request of appellee for additional findings of fact, we make the following specific conclusions, although we are of the opinion that they are involved in the conclusions already announced.

1. Mullane, as the agent of appellant, was charged with the duty of seeing to the safety of the premises and to have remnant stacks of ties thrown down if they should be left in a dangerous condition.

2. Supplementing the conclusions that (1) the superintendent, Fenn, was negligent in directing that a remnant of four or five tiers in a stack of ties should be left standing when the night crew quit work; (2) that the night crew were negligent in doing so in the present case, and (3) that Mullane, the foreman, either discovered or by ordinary diligence

would have discovered the dangerous condition of the ties before the men went to work moving the car and in time to have prevented the injury, we further find, in order to give full effect to the verdict of the jury, that each act of negligence so found was an efficient cause of the appellee's injuries, without which they would not have happened.

3. Fenn's instructions to the night crew were such as to direct the manner in which they were to stack the ties and in which they were to leave the remnant stacks of ties; and in case of a remnant stack of four or five tiers, his instructions to the night crew were that they could leave them as they were.

4. Appellee had no knowledge of the dangerous condition of the remnant stack of ties by which he was injured, nor of the risk to which he was subjected.

Writ of error refused.