GEO. SELIGSON & Co. v. BROWN & BROWN.

(Case No. 1779.)

1. FRAUDULENT CONVEYANCE.— A charge to the effect that "if a debtor in failing circumstances sells his property for a fair consideration with the expressed purpose of applying the proceeds to the payment of his debts, and that is known to be his intent by the purchaser, such sale is not illegal and void," was given in a case involving the validity of a sale made by a merchant of his entire stock of goods, which were paid for by taking negotiable notes. *Held*, that giving the charge was error, because the law will not allow a purchaser to enable an insolvent debtor to evade his creditors by giving money or negotiable notes which cannot be reached by legal process, for his visible property, which might be subjected to the payment of his debts.

APPEAL from Grimes.   Tried below before the Hon. John Kennard.

Suit for trial of the right of property under the statute.   On November 25, A. D. 1881, appellants brought suit in the district court of Grimes county against Joel T. Smith, on a sworn account, and obtained an attachment on the ground that Smith had disposed of his property in whole or in part with intent to defraud his creditors.   The writ of attachment was levied upon goods in the storehouse of appellees Brown & Brown.   Appellees filed their claimants' oath and bond, and the attached property was delivered to them.

Smith made default, and Seligson & Co. took their judgment by default, and foreclosure of their attachment lien on the property attached, subject to the result of the suit for the trial of the right to the property under the claim made by Brown & Brown.

The parties, under direction of the court, made up and filed issues as follows:

"First. The plaintiffs claim that the property levied on and claimed by defendants was subject to the attachment in their favor against defendant Joel Smith, because the said Smith had disposed of his property in whole or in part with intent to defraud his creditors, as stated in the affidavit for attachment, and that defendants had purchased the stock of goods, wares and merchandise of said Smith, with knowledge of this intent, or with knowledge that said Smith was insolvent, and that the result of such sale would be to hinder and delay the creditors of Smith in the collection of their debts and to defraud them out of the same, and that defendant had not paid said Smith for said goods, wares and merchandise obtained from him, the value of which was largely in excess of plaintiff's debt; that defendants had mingled and confused the goods, wares and merchandise obtained by them from said Smith, with goods, wares and merchandise owned by themselves, so that the goods, wares and merchandise so obtained by them from said Smith could not be identified or pointed out by plaintiffs, or by the officer levying the attachment, and defendants refused, upon demand of said officer, to point out and identify the said goods, wares and merchandise so obtained by them from said Smith so that said officer could levy said attachment upon them.

"Second. The claimants join issue to this claim of plaintiffs in attachment, and say they deny all the allegations of the plaintiffs, and say that they bought the goods of Smith in good faith, paid for them in good and solvent notes their full value; not to hinder or delay Smith's creditors in the collection of their debts, but believing that he was in solvent circumstances and that this amount of money would more than pay every dollar that said Smith owed; that their real purpose in purchasing the goods was to provide for debts on which they were security of $3,100, and to enable them to collect certain amounts due Smith which they held as collateral to their being his guarantors, and which they believed could be best collected by carrying on business at the stand of said Smith, and that the $3,500 would pay every debt he owed, and the notes were given in aid of instead of to hinder or delay the payment of his debts.

"They likewise deny that the goods levied on in this cause and under this attachment were ever the goods of Smith, except a very small portion of them, and so many as were, were bought by claimants before the attachment was levied and were in their possession."

On the issues thus joined a trial was had, which resulted in a verdict and judgment for the appellees, Brown & Brown.

The court gave the special charge found in the syllabus, which was assigned as error.

*Boon & Cobbs*, for appellants, cited: R. S., p. 30; id., 363, art. 2465; id., Appendix, p. 7; Mosely v. Gainer, 10 Tex., 393; Walcott v. Brander, 10 Tex., 419; Edrington v. Rogers, 15 Tex., 194; Mills v. Howeth, 19 Tex., 257; Edmundson v. Silliman, 50 Tex., 106; Cox v. Miller, 54 Tex., 17.

*Hutcheson.& Carrington*, for appellee.

WILLIE, CHIEF JUSTICE.— The special charge given by the court below at the request of appellants holds in effect that a debtor in failing circumstances may dispose of his property for a valuable consideration, and place it beyond the reach of his creditors, provided he intends to use the money received for it in the payment of his debts. That such an intention expressed to the purchaser will save the sale from being held fraudulent and void, whether any provision was made to secure the purchase money to his creditors or not. In fact that it will be upheld though the consideration is paid to the vendor, and it is left to his option whether he will distribute it amongst the parties for whom it was intended, or take the benefit of it himself.

It is difficult to perceive upon what principle such a doctrine can be sustained. If the transfer was a mere exchange of one piece of property for another of about the same value, or if the consideration was to be paid by the purchaser directly to the creditors of the vendor, there might be some reason to support the doctrine.

But when the consideration is money or negotiable notes, and it is paid or transferred into the vendor's hands, we cannot see what guaranty the creditors have that the good intentions of the purchaser will be carried out. He has exchanged property which they could have subjected to their debts for that which is beyond their reach, either by execution or garnishment. They are at his mercy, and he can dictate such terms as he may find best for his own interest.

The law will not allow an insolvent debtor thus to withdraw from the reach of his creditors property which they can readily have subjected to their claims, and in place of it substitute a mere chance of payment dependent upon his own discretion and convenience.

If such were the law, all check upon fraudulent conveyances would

be destroyed.   Any insolvent debtor disposed to defraud his credit-ors could easily do so by expressing, at the time of selling, his inten-tion to devote the proceeds of the property sold to the payment of his debts; and proving by his own oath in court, if it became necessary, that such was his intention, and that the purchaser was informed of this fact.   No knowledge on the part of the vendee that his vendor was deeply involved in debt, and that his creditors were pressing him and about to seize his property, and that he was selling for the purpose of putting it beyond their reach, would vitiate the sale, provided the intention to devote the purchase money to the payment of debts was made to appear, no matter whether that intention was ever carried out or not.

It is urged that in the present case it was proved that all the notes received by Smith for the goods were used in the payment of his debts.

That may be so, but the charge does not require the purchaser to see that the money is applied to the payment of the seller's credit-ors, but leaves that to the latter's own discretion.   The jury may not have been satisfied with the proof as to the appropriation of the notes, and yet under the charge they could not have set aside the sale.

Whether the facts as to the disposition of the notes as detailed by Smith were sufficient to show a proper application of them, is not necessary for us now to decide.   It would seem, however, that a mere general statement that he conveyed them to his creditors to pay his debts, which appears to have been the extent of his testi-mony on that subject, is hardly sufficient.   Some proof should have been made as to the persons who received them and the character of the debts paid, and the date of the accrual of these debts, and the amount paid on each, so that the jury might determine as to whether or not the money went to just and proper creditors, and good faith was exercised in its distribution.

We do not, however, undertake to decide whether or not any application of these notes would have saved the sale to Brown & Brown from being held fraudulent.   Some respectable courts have held that when the consideration is applied to the payment of debts, the sale, under circumstances like the present, will be upheld. Avery v. Johann, 27 Wis., 246; Green v. Gantum, 19 N. J. Eq., 105; Gregory v. Harrington, 33 Vt., 241.

It has been held to the contrary in Mississippi (Farmers' Bank v. Douglass, 11 Sm. & Marshall, 469), and it would seem difficult to uphold such a sale when, as in the present instance, payment is made

in negotiable promissory notes, payable at future times, which postpone satisfaction of the creditors' demands to distant dates, deprive them of a present enforcement of their debts, and make their ultimate collection depend on the continued solvency of the maker of the notes. Such transactions, too, should be considered in reference to our assignment law, which may have the effect to render them illegal. We do not feel called to pass upon these questions, although they may arise upon another trial; for they have not been argued, and no authorities bearing upon them have been cited in the briefs of either party.

For the disposition of the present appeal it is sufficient to say that the special charge as given the jury does not require the purchaser to see to the application of the purchase money, and was clearly erroneous. For this error the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered February 19, 1884.]