## P. W. GALLAGHER & CO. v. GOLDFRANK, FRANK & CO.

### No. 2717.

1. **Damages for Attaching Property.**—In reconvention by a defendant in attachment for damages for the wrongful seizure of his property in attachment, the plaintiff's debt being admitted, *held*, if the ground alleged as basis for attachment in fact existed, that defendant was not entitled to either actual or exemplary damages.

2. **Grounds for Attachment.**—That a merchant, the defendant in attachment, had executed a mortgage upon his goods, notes, and accounts to secure a creditor, with stipulation that the mortgagee should take possession of the property and should dispose of it "in a regular course of mercantile sales at customary prices," the defendant being indebted to others and to extent of his assets, was ground for attachment, and supported the affidavit that the defendant had disposed of his property in part with intent to defraud his creditors.

3. **Fraud by Insolvent Debtor—Mortgage.**—A creditor may take a mortgage upon his debtor's property to secure his debt, even though the debtor be in failing circumstances; but if at the same time he advances his debtor a sum of money and leaves it subject to the latter's control, and attempts to secure its repayment in the same transaction, the transaction it seems would be fraudulent, in that it places the money advanced beyond the reach of the creditors.

4. **Fraudulent Mortgage.**—The effect of a provision that the mortgagee should sell the goods in due course of trade and at customary prices is to hinder and delay other creditors.

5. **Briefs—Rules for Supreme Court.**—Disregard of the rules of the Supreme Court in the preparation of briefs criticised.

APPEAL from Gonzales. Tried below before Hon. W. S. Delaney, Special District Judge.

The opinion states the case.

*Fly & Davidson* and *Ponton & Fly*, for appellants. —1. If the defendants had not disposed of their property with intent to defraud creditors, then the ground for the attachment was false, and plaintiff would be responsible for the actual damages growing out of their act, no matter if there was probable cause for the attachment, and no matter if the acts and words of defendants led the plaintiffs into suing out the attachment. Blum v. Davis, 56 Texas, 427; Jacobs, Bernheim & Co. v. Crum, 62 Texas, 401; Carothers v. McIlhenny, 63 Texas, 138; Christian v. Seeligson, 63 Texas, 405; Woods v. Huffman, 64 Texas, 98; Culbertson v. Cabeen, 29 Texas, 247; Drake on Att., 154; Halff, Weis & Co. v. Curtis, 68 Texas, 642; Bear Bros. v. Marx & Kempner, 63 Texas, 298; Friedlander v. Ehrenwerth, 58 Texas, 350.

2. Defendants claimed and proved that the transfers of property had been made to secure bona fide creditors. The law allowed them the privilege, and this material point in their defense should have been submitted to the jury.

As to preferring creditors. Greenleve v. Blum, 59 Texas, 124; La Belle W. W. v. Tidball, 59 Texas, 291; Stiles v. Hill, 62 Texas, 429; Lewy v. Fischl, 65 Texas, 311.

3. If plaintiffs had probable cause for getting out the attachment, but the alleged grounds were untrue, defendants would be entitled to the actual damages sustained by them, which would be the value of the goods with 8 per cent interest thereon from time of seizure. Blum v. Stein, 68 Texas, 608; Halff, Weis & Co. v. Curtis, 68 Texas, 642; Wallace v. Finberg, 46 Texas, 35; Blum v. Merchant, 58 Texas, 400; Sedg. on Dam., 401; Woods v. Hoffman, 64 Texas, 98; Kaufman v. Babcock, 67 Texas, 241.

*Harwood & Harwood,* for appellees.—The effect of the mortgage, with the transfer of possession for an indefinite time, the goods to be sold in the usual course of trade, and not at forced sale, was to withdraw from the reach of creditors assets to the amount $10,000 or $12,000 in order to pay a $2000 debt. The money deposited in the bank could not be reached by the creditors, and according to their own admissions was only paid after a judgment was obtained. The court has repeatedly held such transactions fraudulent and void, and the whole doctrine is reiterated in the case of Oppenheimer v. Halff & Bro., 68 Texas, 412.

GAINES, ASSOCIATE JUSTICE.—The appellees brought this suit against appellants to recover a debt due them, and sued out a writ of attachment upon the ground that the defendants had disposed of their property in part with intent to defraud their creditors. The defendants pleaded in reconvention, alleging that the attachment was wrongfully and maliciously issued, and claimed damages both actual and exemplary. Upon the trial the defendants admitted the justice of the plaintiffs' demand, and there was a verdict and judgment for plaintiffs. The view we take of the case renders it unnecessary to consider the numerous assignments of error copied in the brief for appellants. If the evidence, viewed in its most favorable aspect for appellants, shows that the ground upon which the writ was sued out in fact existed, then they were entitled to claim neither actual nor exemplary damages.

The evidence shows that appellants were merchants, doing business in Gonzales County, and that they were indebted in an amount nearly if not quite equal to the value of their assets. The attachment issued on the 5th of January, 1883. On the 6th of December, 1882, the appellants being indebted to the firm of Carson & Ellis, executed a deed in trust to one Dilworth to secure that indebtedness upon all their stock of merchandise, their notes, and accounts, and also upon sundry parcels of real estate. By the terms of this instrument the mortgagors were to remain in possession of the goods, to sell them in the usual course of business, to collect the notes and accounts, and to apply the proceeds to the payment of the debt intended to be secured. On the 23d of December, 1882, Carson & Ellis executed a release of this mortgage, and on the same day ap-

pellants executed to them another mortgage upon their goods, notes, and accounts, to secure the same indebtedness.

This last instrument contained a stipulation that the mortgagees should take possession of the property, and should dispose of it "in a regular course of mercantile sales at customary prices." The indebtedness named in the mortgages was $6245.23. W. D. W. Peck, one of appellants, testified that when the mortgages were executed they were indebted to Carson & Ellis in about the sum of $2000, and that it was agreed between them that Carson & Ellis should place in bank subject to their order an additional sum of $4000, which was to be applied to the payment of their other debts. He also testified that their indebtedness amounted to $15,000 and their assets to $18,000, but that when the attachment issued all their property had been mortgaged to secure debts, except a tract of 320 acres of land worth about $2 per acre, upon which a vendor's lein existed. He also swore that after the attachment was issued in the present case some thirty or forty other suits were brought against them, but that these debts upon which they were brought had been subsequently paid. The money which was deposited by Carson & Ellis to the credit of appellants, Peck testified, was intended to be paid upon these debts, but he admitted upon cross-examination that it was subject to their absolute control. The banker with whom it was placed also testified that it was subject to their check for any purpose.

The appellants, even though insolvent, had an undoubted right to secure the payment of their debt to Carson & Ellis by giving them a mortgage upon their goods. But being oppressed with debt and being unable to meet their obligations, did they have the right to transfer practically all of their encumbered property to secure not only an existing debt, but also a new debt, created at the time of the transaction for an advance to them of $4000 in cash? We think not. The effect of the transaction, if permitted to stand, would have been to place at least assets of the value of $4000 beyond the reach of other creditors. This court has repeatedly held that although a creditor may accept from a debtor in failing circumstances property in payment of his debt, if not more than reasonably sufficient in value to discharge it, yet if he receives a transfer of property exceeding in value the amount of his debt and pay cash or give a negotiable instrument for the excess, the transaction is fraudulent. Elser v. Graber, 69 Texas, 222, and cases cited. So, also, a creditor may take a mortgage upon his debtor's property to secure his debt, even though the latter be in failing circumstances; but if at the same time he advances his debtor a sum of money and leaves it subject to the latter's control, and attempts to secure its repayment in the same transaction, we see no reason why the same rule should not apply which obtains when he purchases the property in satisfaction and pays in cash an additional consideration. The effect of both transactions, if permitted to stand, is

to place property to the value of the money so paid or advanced beyond the reach of creditors, and thereby to defraud them in the collection of their debts.   But there is still another reason why the mortgage to Carson & Ellis must be held fraudulent.   The effect of the provision that the mortgagees should sell the goods in due course of trade and at customary prices was to hinder and delay creditors.   The mortgagees are not permitted to dispose of the goods promptly and to pay their own debt, and thus to leave the surplus subject to sale for the payment of other claims against the mortgagors.   They have authority to sell only at the usual retail prices; and it is apparent that unless the mortgage be set aside the surplus over a sufficiency to pay the mortgagees' debt is placed beyond the reach of creditors for an indefinite time.   The mortgage was void.   The attachment was not wrongfully issued, and the defendants were entitled to no damages.   A verdict for the plaintiffs was the only verdict authorized by the evidence in the case.   The rulings of the court complained of by appellants, if erroneous, could not have prejudiced their case.   The verdict should have been the same if the rulings had been different.   In such a case the judgment must be affirmed without reference to errors not affecting the merits of the cause.   Bowles v. Brice, 66 Texas, 724, and cases cited.

We call attention to the fact that appellants' brief in this case wholly fails to comply with the rules in many essential particulars.   Many of the assignments of error are unaccompanied with either propositions or statements.   Some are followed by propositions, but have no statements showing by reference to the record how the questions arose.   In the introduction to the brief there is a very full history of the cause, which was probably intended to supply the special statements under the several assignments.   The rules require first a statement of the nature and result of the suit—that is to say, not a history of the case, but merely a brief designation of its character and of the disposition of the cause in the final judgment.   Many briefs which reach this court could be improved by giving more concise preliminary statements and fuller expositions of the record under the assignments.   Each assignment or proposition should be accompanied by an apposite statement when the matter has not been previously stated under some other proposition.   Assignments so defectively presented as those shown by the brief in this case can not be considered, but we feel safe in saying that appellants have not been prejudiced by the failure to comply with the rules in the present instance.

The judgment is affirmed.

*Affirmed.*

Delivered January 14, 1890.