T. J. PADDOCK ET AL. V. JOHN A. JACKSON.

Delivered May 20, 1897.

**1. Injunction—Petition and Answer Construed Together, When—Practice.**

In determining upon appeal the sufficiency of a petition for an injunction, the facts supplied by the answer will be taken into consideration; and where it appears, thus considered, that an issue was presented which was tried below, an assignment of error attacking the petition as not sufficient upon general demurrer will not be sustained.

**2. Same—Restraining Sale Under Execution—Cloud Upon Title.**

A sale of plaintiff's land under an execution against his grantor would not, of itself, create such a cloud upon his title as to entitle him to an injunction to restrain the sale, since purchasers thereat would take only such title as the grantor then had, and the burden would be upon them to show the fraudulent character of the grantor's deed to plaintiff.

**3. Same—Multiplicity of Suits and Irreparable Injury.**

Where plaintiff had divided a tract of land into 300 town lots, and had advertised and was selling them, the entire tract was levied on by creditors of his grantor, upon the theory that the sale to plaintiff was fraudulent, the multiplicity of suits which the execution sale would have entailed upon plaintiff and the injury to the value and sale

by him of the lots, entitled him to an injunction restraining the execution sale until his title could be adjudicated.

**4.  Fraudulent Sale—Notice—Putting on Inquiry.**

Where the purchaser, at the time he was approached by the vendor and offered a tract of land for one-third its value, knew that the vendor was insolvent and being pressed by creditors, this was sufficient to put him on notice that the vendor's purpose in making the sale was to defraud his creditors, and to subordinate the title he acquired to their claims.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*S. A. McCall* and *N. A. Cravens*, for appellant.—1.   The claimant of property levied upon under execution can not invoke relief by injunction to prevent its sale, unless some good reason be alleged in his petition why he did not resort to his legal remedy of an action in trespass to try title, as he might have done in this case. Carlin v. Hudson, 12 Texas, 203; Whitman v. Willis, 51 Texas, 421; Purinton v. Davis, 66 Texas, 455; Spencer v. Rosenthal, 58 Texas, 4; Mann v. Wallis, 12 S. W. Rep., 1223; Cook v. Railway, 22 S. W. Rep., 58; Coal Co. v. Bank, 34 S. W. Rep., 383.

2.   Injunction will issue to prevent a sale casting a cloud upon title only when the evidence upon which the right depends is not of record or shown in the papers through which the right depends. Gardner v. Douglas, 64 Texas, 76; Van Ratcliff v. Call, 72 Texas, 492; 10 S. W. Rep., 578; 12 S. W. Rep., 1123; 30 S. W. Rep., 1123.

3.   Whatever is sufficient to put a party upon inquiry amounts to notice, if inquiry becomes a duty and would lead to a knowledge of the required fact. Briscoe v. Bronnaugh, 1 Texas, 326; Parks v. Willard, 1 Texas, 350; Wethered v. Boone, 17 Texas, 143; Vardeman v. Edwards, 21 Texas, 737; Hines v. Perry, 25 Texas, 444; Martel v. Somers, 26 Texas, 551; Walton v. Compton, 28 Texas, 569; Hawley v. Bullock, 29 Texas, 216; Bryan v. Crump, 55 Texas, 1; Mullins v. Wimberly, 50 Texas, 457; John v. Battle, 58 Texas, 591; 2 Spence's Eq. Jur., 756; 1 Story's Eq. Jur., sec. 400; Webb on Record of Titles, secs. 223, 224.

4.   To constitute one an innocent purchaser and in good faith, it must appear that he has paid the purchase money without notice. Wright v. Lynn, 16 Texas, 35; Edrington v. Rogers, 15 Texas, 188; Mills v. Howth, 19 Texas, 259; Batts v. Scott, 37 Texas, 59; Willis v. Johnson, 38 Texas, 304; Harrison v. Boring, 44 Texas, 255; Traylor v. Townsend, 61 Texas, 144; Blum v. Simpson, 66 Texas, 84; Holly v. Fontaine, 33 S. W. Rep., 261; Webb on Record of Title.

*M. S. Cooper*, for appellee.—1.   The court did not err in overruling the demurrer and in refusing to dismiss the bill for want of equity. Clegg v. Varnell, 18 Texas, 294; Byars v. Justin, 2 Texas Civ. App., 690; Friedlander v. Ehrenworth, 58 Texas, 350; O'Neal v. Bank, 64 Texas, 644; Floyd v. Tinnen, 23 Texas, 294; 1 High. on Injunc., secs. 1508, et seq.; 2 Story Eq. Jur., chap. 23.

2. Where the trial court erred in overruling a general demurrer to a petition, but the record discloses that the defendant had answered fully on the facts, and the plaintiff had filed his replication to such answer, and on the issues thus joined between the parties a trial on the facts was had and judgment thereon rendered, this court will not reverse for the error in overruling the demurrer, where the findings of law and fact found by the trial court on the vital issues in the case are sustained. Authorities supra.

3. It matters not how insolvent Ayres might have been at the date of his transfer to Jackson, nor what fraudulent intentions he may have had with reference to Paddock and other creditors, it was incumbent upon the defendant in the court below, who had alleged fraud in the transaction and upon whom the burden of proof rested in this issue, to show that Jackson either knew of and participated in the fraud, or that he had such notice of the notorious insolvency or fraudulent intent on the part of Ayres as would be sufficient to put a reasonably prudent person upon inquiry as to these matters. Mere inadequacy of price alone will never raise a presumption of fraud. Mills v. Waller, Dal., 416; Willis v. Whitsett, 67 Texas, 673; Ackerman v. Smiley, 37 Texas, 211; Barrett v. Barrett, 31 Texas, 344; Ayres v. Duprey, 27 Texas, 607; Lewy v. Fischl, 65 Texas, 311; Bursch v. Smith, 15 Texas, 219; Robertson v. Courly, 19 S. W. Rep., 1006; Sanger v. Colbert, 19 S. W. Rep., 863; Ratto v. Bluestine, 19 S. W. Rep., 338; 1 Story Eq. Jur., secs. 245, 246.

WILLIAMS, ASSOCIATE JUSTICE.—Appellee brought this action for the purpose of enjoining the sale, under an execution in favor of appellant Paddock against J. K. Ayers, of certain land described in the petition as belonging to appellee. The petition alleged that plaintiff was the owner of the land levied on as the property of Ayers, by regular chain of title on record in Montgomery County, where the property lies, prior to the rendition of the judgment on which the writ issued, and that he is still such owner. The land was described as 328 town lots in the town of Conroe, and two parcels of land, adjoining them, containing 165 acres. As grounds for the injunction it was alleged that the levy had injured plaintiff, in that the sale of the land had been obstructed and hindered, and was still so obstructed; that the sale of the land, under the execution, would cause irreparable injury to plaintiff, in that it would cast a cloud upon his title, and deter persons from buying the same or any part thereof, and cause the value thereof to greatly depreciate in the market and greatly harrass petitioner, delay him in the sale and improvement and disposition of his lots, and cause him much trouble, litigation, and expense to remove clouds from the title thereof, and cause an indeterminable measure of damages and an injury not ascertainable, for which plaintiff would have no adequate remedy; that many persons are desirous of purchasing portions of said lands, and up to the time of the advertisement of the intended sale the same were growing in demand in the mar-

ket, but that, if same were sold as the property of another, plaintiff would suffer irreparable loss.

An injunction was granted, and the cause was afterwards heard on its merits. No motion was made to dissolve the writ for want of equity in the bill, and the only exception to the petition was a general demurrer. This was overruled, and upon the evidence judgment was rendered in favor of plaintiff, sustaining his title and perpetually enjoining the sale which had been advertised.

The first ground urged for the reversal of this judgment is that the petition showed no ground for the injunction, and that the general demurrer should have been sustained. It will be observed that the petition does not set out any part of plaintiff's title to the land, nor show that it proceeded from Ayers, or that he was in any way connected with it. For this reason alone, it may be that, if the petition had stood alone when it was acted upon, the general demurrer should have been sustained. But the defendants had filed their answer, in which they set forth the claims of both parties, showing that plaintiff's title was a deed from Ayers, of date January 6, 1894, and that Paddock's judgment against Ayers was rendered on January 17, 1894, and that an abstract of it was duly registered in Montgomery County on January 29, 1894. The answer attacked the deed to plaintiff by the averment that it was made by Ayers with intent to hinder, delay, and defraud his creditors, of which plaintiff was charged with notice, and asked that it be declared void, set aside, and annulled, and that his lien arising from the record of his abstract be enforced, and that the land be held subject to the judgment. In determining the sufficiency of the petition, the facts supplied by the answer must be taken into consideration, and from them we see that there was an issue between the parties as to the validity of the deed under which plaintiff held as against the judgment. All of the facts show, however, that purchasers at the sale would have taken only such title or interest as Ayers had subject to the debt, and the burden would have been upon them to prove the fraud by which it was sought to set aside the deed and subject the property to the judgment. It can not, therefore, be said that the sale would have given rise to such a cloud upon plaintiff's title as, of itself, would afford reason for the granting of an injunction. Whitman v. Willis, 51 Texas, 429; Purinton v. Davis, 66 Texas, 455; Mann v. Wallis, 75 Texas, 611.

But other facts appear which, in our opinion, distinguish the case from all of those, in this State, in which it has been held that an injunction would not be granted to restrain a sale under execution of land as the property of the judgment debtor, at the suit of a third party who did not show that he was threatened by the sale with an injury for which the legal remedies were inadequate. While the proposition stated in these decisions is well settled, it is equally true that if the party seeking the restraining order makes it appear that he is in danger of being subjected by the proceeding to injury for which the ordinary legal remedies are inadequate, he is entitled to the aid of the writ of injunction. The peti-

tion in this case might properly have been much fuller than it is in the statement of the facts relied on, and may have been open to special exceptions, or to a motion to dissolve the injunction, pointing out its particular defects; but we can not say that it is bad on general demurrer. Most of the property in question consists of town lots, such as are usually held in such large number for purposes of sale. That they were held for such purpose is not directly alleged, but is, we think, a reasonable intendment from the facts averred. The preservation of their value in the market was of great importance to plaintiff, and hence, while it can not be said that his title would be impaired by the sale, it is nevertheless true that its value to him would have been injured. This is alleged, and it is a fact the probability of which the court can not refuse to see. The property, furthermore, consists of 330 different parcels, and these would properly have been sold separately. Rev. Stats. 1879, art. 2305. There would probably have been a great number of purchasers, with each of whom plaintiff would have had to litigate his title. It can not be said here, as it was said in Purinton v. Davis, that there would have been no necessity for him to sue the purchasers. The assertion that his deed was fraudulent, and therefore inferior to the right of the judgment creditor, would necessarily have affected the value and salability of his title to the property, as he alleges it would have done. According to the allegations, this effect had already partially flowed from the levy. In order, therefore, to avert further damage and to prevent a multiplicity of suits to protect himself in the enjoyment of his property, we think it was proper for the court to retain the case and try the issue between plaintiff and the judgment creditor, rather than force the former to endure the loss resulting from the assertion of the adverse claim until the sale had been made, and then try the same issue with numerous purchasers. But, whatever may be thought of the petition, the answer tendered the issue and sought affirmative relief upon it, and there can be no doubt of the right of the judgment creditor to maintain an action to set aside, before sale, a fraudulent deed by which his remedy is obstructed. The answer attacked plaintiff's title upon one ground alone, admitting that the deed was made January 6, 1894, and we agree with the court below that the question of fraud in that deed was the only one which it was called upon to determine from the evidence. The evidence upon that point shows that, prior to January 6, 1894, Ayers went to Austin, where Jackson, an old friend, lived, and proposed to sell to him the property embraced in the deed for $1000, and the trade was agreed on. Ayers returned to Conroe, and on January 6, 1894, executed the deed, caused it to be recorded on January 9, and, at some time between that day and the second day of February following, deposited it with the express company to be forwarded to Austin to Jackson. The evidence warranted the conclusion that it reached Jackson before the filing of the abstract of Paddock's judgment. On February 2, 1894, Jackson remitted to Ayers the $1000 by express, which reached him the next day. Before buying, Jackson caused attorneys at Conroe to examine Ayers' title, and obtained their

opinion that it was good.  Whether this was before or after the trade was agreed upon does not appear.  Some time prior to this, Brown Bros., of Austin, had loaned Ayers a large sum of money, secured by deed of trust, on a large quantity of his lands, and had caused some of the lands to be sold to satisfy the debt.  They had also recovered a judgment against Ayers, and had caused a tract of land in Montgomery County, called the Bricker tract, to be sold under execution, and a balance of $1000, or $1200, remained unsatisfied, and the Bricker tract was in litigation between them.  Jackson knew these facts when he bought the property in controversy.  Ayers had twice before the sale of the property in controversy applied to Jackson for the loan of money to pay the balance of the Brown Bros.' judgment and redeem the Bricker land, and Jackson had finally agreed to advance it, and in March, 1894, did pay off the judgment, redeem the land, and take title to it from Ayers to himself. At the time of his sale to Jackson of the property in controversy, Ayers told Jackson that he wanted the money to pay debts, but no provision was made for such application of the money, and it was not in fact so applied.  There is no evidence that Jackson knew of other debts than those already mentioned.  In fact, Ayers owed others whom he could not pay, and has not yet paid.  The suit of Paddock for $1500 was pending against him, and an attorney in Montgomery County held other claims against him which he was and is unable to pay.  Most of the property in controversy had been previously sold at the instance of a Galveston creditor of Ayers by the sheriff of Montgomery County and bought by parties who reconveyed it to Ayers. At the time of the sale to Jackson, the records of Montgomery County showed no evidence of any property owned by Ayers, outside his homestead, except that conveyed to Jackson, some hotel property in Conroe, and sixty-six acres of the property mortgaged to Brown Bros.  Ayers stated on the stand that he owned interests in other lands in Montgomery County, but declined to state what they were. The hotel property and the sixty-six acres were involved in litigation between Ayers and Brown Bros.  Jackson knew of this property and its involvement, but did not know whether or not Ayers owned other property, and had no knowledge, beyond that above stated, as to the extent of his indebtedness, and made no inquiry as to either, or upon any subject, except as to Ayers' title to the property purchased.  The court below found that the property, when sold to Jackson, was worth $3000.  It certainly was not worth less, and the evidence justifies the conclusion that it was worth considerably more.  This was known to Jackson. Twenty of the lots were sold within a year or so after the conveyance for $1200, Ayers acting as Jackson's agent in making the sales.  Jackson stated that he had confidence in Ayers, having known him for twenty-five years, and relied on him not to sell him lands about the title to which there was trouble.  He also stated that he was a jeweler and broker, and thought the trade was a good one, and made it for that reason, and that he bought it in good faith.  In accordance with the finding of the trial judge, we find these statements to be true, with the explanation that, by

purchasing in good faith, is meant that he bought with no evil or corrupt purpose.

In this statement of the evidence we have given the version of every circumstance which is most favorable to appellee. There is no conflict in the evidence, but the facts stated are all shown by the testimony of Ayers and Jackson.

We can not agree with the trial judge, that Jackson can be treated as an innocent purchaser without notice of any fraudulent intent on the part of Ayers, for that is the view upon which the judgment is based. In our opinion, the evidence conclusively shows that, when the sale was made Ayers was insolvent, and that the facts actually within Jackson's knowledge showed this to be the fact. Ayers had been unable to meet the debt secured by the deed of trust to Brown Bros., and his lands had been sold. Judgment had been obtained against him by those parties and other lands sold, and he was unable to redeem it or pay the balance, and had to apply to Jackson for assistance, which was given upon the security of the land. He stated at the very time of the sale that he wanted the proceeds of the property with which to pay debts. These facts were certainly at least prima facie evidence of insolvency. But if they did not themselves show it, they certainly were sufficient to excite inquiry in the ordinary mind, and that inquiry would have led to knowledge of the insolvency evidenced by facts of such notorious character as those stated. The manner in which the trade was made and the inadequacy of the price were also pregnant facts to put a prudent man on his guard. As to the property, the evidence shows that Jackson in fact knew the status of all of which the records showed ownership in Jackson. He did not know that it was all, and neither did he try to know. He knew, or ought to have known, of the insolvency of his vendor, and the law charged him with the knowledge that he could not aid him in converting his tangible property, which his creditors could reach, into money, which they could not reach. The statement of Ayers that he wanted the money with which to pay debts is entitled to little weight. Sanger v. Colbert, 66 Texas, 225.

Jackson took no precautions to see that creditors got the money. Elser v. Graber, 69 Texas, 225; Seelingson v. Brown, 61 Texas, 180.

By the conveyance to Jackson, Ayers stripped himself of all of his property within the reach of his creditors, converting it into money. The necessary effect of this was to defraud his creditors. Jackson aided him in doing this, when he had notice of his insolvency and of the effect which the conveyance would have upon the interests of creditors. The absence of a bad motive does not relieve the transaction of its fraudulent character. The parties are held to have contemplated the consequences of their act, and this constitutes the fraudulent intent which vitiates the conveyance. Authorities supra, and Miller v. Jannett, 63 Texas, 86.

The facts admitted by appellee Jackson conclusively show the conveyance under which he claims to have been fraudulent, and no judgment

upon them can be rendered in his favor. The judgment will, therefore, be reversed and here rendered in favor of appellee, dissolving the injunction, canceling the deed, and declaring the property to be subject to appellee's judgment.

*Reversed and rendered.*

Writ of error denied.