### J. S. ARMSTRONG V. J. F. ELLIOTT.

Decided December 21, 1898.

**1. Practice on Appeal—Special Issues.**

The appellate court will not consider the sufficiency of the evidence to support a finding of the jury upon a special issue submitted to them, where the lower court was not asked to set aside the findings because contrary to the evidence, but was requested to enter judgment for the appellant under the findings.

**2. Same—Error Immaterial When Distinct Issues.**

Erroneous rulings of the trial court as to one issue involving the title of the land in controversy are immaterial where there is another distinct issue which is determinative of the title.

**3. Practice on Appeal—Briefs.**

Assignments of error complaining of the refusal to submit certain issues to the jury can not be considered where the requested charges are not set out in appellant's briefs, as it can not be assumed that they were material.

**4. Practice—Special Issues.**

A party who desires the submission of a special issue to the jury should make a request therefor, since the statute provides that when the case is submitted on special issues the failure to submit any issue shall not be deemed a ground for reversal, unless the submission has been requested in writing by the party complaining of the judgment. Rev. Stats., art. 1331, as amended in 1897, Sess. Acts, p. 15.

**5. Same—Limitations.**

Where appellant failed to request the submission to the jury of certain issues involving the matter of limitations, the defense of limitations will not be considered on appeal. Following Gay v. Railway, 86 Texas, 609.

**6. Same—Motion for New Trial Below.**

In order to have a verdict set aside on appeal for want of evidence to support it, there must be motion for new trial made in the trial court distinctly specifying the ground of complaint, and if it be overruled, error must be assigned to this action, and where no error is assigned to the overruling of the motion, it is waived.

**7. Same—Special Issues—Fundamental Error.**

Where a special verdict fails to find every fact necessary to support the judgment, the defect may be noticed on appeal as fundamental error, unless every fact essential to support the judgment may be found in the record, though not included in the special verdict.

**8. Conveyance in Fraud of Creditors.**

A conveyance of real property to a purchaser having knowledge of the insolvency of the owner when he bargained for it and paid the price, consisting of money and notes, is void under the statute of frauds as having a necessary tendency to hinder, delay, and defraud creditors, where the purchaser did not undertake to have the money and notes applied to the payment of the owner's debts, but left this to the owner's discretion, who used the cash received as well as the proceeds of the notes mainly in paying and compromising his debts, and the rest for living expenses, paying some of the debts in full and compromising some for less than their face value. Following Elser v. Graber, 69 Texas, 225.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

*McCormick & Spence,* for appellant.

*H. G. Robertson* and *W. A. Kemp,* for appellee.

TARLTON, CHIEF JUSTICE.—This is an action of trespass to try title involving certain real estate in the city of Dallas. The appellee, J. T. Elliott, as plaintiff, and the appellant, J. S. Armstrong, as defendant, claim under one H. C. Clark as a common source, though the apparent title to the property was never in Clark.

On the 4th day of September, 1893, the property stood in the name of J. B. Watkins. On that day Watkins executed a deed conveying the property to W. E. Wilkin, which deed was recorded on October 25, 1893. On December 1, 1893, W. E. Wilkin conveyed the property to J. S. Armstrong, the appellant, by deed recorded December 5, 1893.

Plaintiff's claim was as follows: 1. A judgment in favor of the North Texas National Bank versus H. C. Clark, of date May 18, 1893, for $138.64 and costs, duly abstracted, indexed, and recorded in Dallas County prior to December 1, 1893. 2. Transfers of said judgment from the plaintiff therein to the Southwestern Manufacturing Company, and from the latter to the plaintiff, J. T. Elliott. 3. An execution upon this judgment issued May 15, 1897, with the sheriff's return thereon showing a levy upon the land in controversy as the property of H. C. Clark. 4. A deed by the constable to the plaintiff conveying the said property as that of H. C. Clark, in consideration of the plaintiff's bid for the land at the sale had by virtue of the aforesaid judgment, execution, and levy.

A second branch of the plaintiff's title is as follows: 1. A judgment in favor of the plaintiff versus H. C. Clark, dated October 11, 1897, for the principal sum of $14,830.30. 2. An execution with a return thereon showing a levy upon the land in controversy by the sheriff of Dallas County as the property of H. C. Clark, and also a deed from Clark by the sheriff

to the plaintiff, in consideration of $100 bid at the sheriff's sale by virtue of the above mentioned execution on the first Tuesday in January, 1892.

The plaintiff alleged that H. C. Clark, the defendant in these executions, had purchased the property from J. B. Watkins and had caused the title to be conveyed by Watkins to W. E. Wilkin, who held the property by a secret trust for the benefit of H. C. Clark, an insolvent, indebted at the time to the plaintiffs in the judgments above set out; that on December 1, 1893, Wilkin, at the procurement of Clark, conveyed the property to the appellant, who took it with full knowledge of the trust existing thereon in favor of Clark, and subject to the lien of one of the judgments under which the appellee claims, at that date duly abstracted, indexed, and recorded in Dallas County.

The defendant Armstrong, in addition to the plea of not guilty, urged the defense of three years' limitation. He proved himself in the continuous possession of the property since the date of the deed from Wilkin, and by regular chain of transfers connected himself with the sovereignty of the soil.

The plaintiff replied to the plea of limitation, alleging that the deed from Watkins to Wilkin under which the defendant claims was made for the benefit of H. C. Clark, and for the purpose of fraudulently concealing his interest in the property, because of his embarrassed condition, and averring that the appellee had not discovered the interest of Clark until just before the institution of this suit.

On February 26, 1898, the cause was submitted to the jury on special issues, and upon their findings judgment was entered in favor of the plaintiff.

In accordance with the findings of the jury upon the special issues submitted, we further find the following conclusions of fact:

H. C. Clark purchased the land in controversy from J. B. Watkins, and at the time of the purchase the title was placed and was afterwards kept in the name of W. E. Wilkin, for the purpose of concealing the property from the creditors of Clark and of placing it beyond their reach. This was done at the instance and request of H. C. Clark, with the purpose of hindering, delaying, and defeating his creditors in the collection of their debts.

On November 9, 1893, J. S. Armstrong, the defendant, and W. E. Wilkin entered into a written contract whereby Wilkin agreed to convey to Armstrong the property in controversy, free of all incumbrance, save an incumbrance of $12,500, in consideration whereof Armstrong agreed to pay certain money, to execute certain notes, and to convey certain realty to Wilkin. At the date of this contract H. C. Clark was the real owner of the land in controversy. So was he at the time and just before the property was conveyed to J. S. Armstrong by W. E. Wilkin by deed of date December 1, 1893.

At the time of the contract of purchase between Armstrong and Wil-

kin, and at the date of the deed to Wilkin, J. S. Armstrong knew that H. C. Clark was the real owner of the land in controversy. So, at the time that he accepted the deed from Wilkin, Armstrong had knowledge of facts or circumstances reasonably calculated and sufficient to put a person of ordinary prudence upon inquiry as to whether H. C. Clark was the real owner of the land in controversy; and if he had pursued this inquiry with ordinary diligence, he would have ascertained the real facts of the transaction, if he did not know them.

Pending the negotiations for the sale of the land to Armstrong, and at the time that Armstrong accepted the deed from Wilkin, H. C. Clark was insolvent and unable to pay his debts, and has ever since been and was at the time of this trial unable to pay his debts; and pending these negotiations, and at the time he accepted the deed from Wilkin, Armstrong knew that H. C. Clark was then insolvent and unable to pay his debts.

The fair reasonable cash market value of the property at the time of its purchase by Armstrong was $40,000, and the fair reasonable cash market value of certain realty put in by Armstrong as part of the purchase price and in part payment of the land in suit was $10,000 at the time of the purchase in question.

At the time of the conveyance by Wilkin to Armstrong, J. T. Elliott, the plaintiff, did not know that the property really belonged to H. C. Clark, nor did he find out anything about Clark's interest or title in it until February, 1897.

At the time of the conveyance by Wilkin to Armstrong, Clark intended with the proceeds of the sale to Armstrong to pay his debts, and these proceeds were paid by Clark on his debts, or mainly thereon. With these proceeds he paid a part of his debts in full. Others he compromised for less than their face value, and at the time of the sale he intended to dispose of the proceeds as he afterwards did.

*Conclusions of Law.*—1. After the trial the defendant Armstrong presented to the court a motion to enter judgment in his favor, the precise terms of which we deem it proper to set out, as follows: "Now at this time comes J. S. Armstrong, defendant in the above styled and numbered cause, and moves the court to enter judgment herein in favor of the defendant for the land in controversy herein upon the findings of the jury to the special issues herein submitted to the jury by the court."

Certain assignments of error styled the first, second, and third additional assignments of error, as also the twenty-second, twenty-third, and twenty-eighth assignments of error, urged in appellant's brief (pages 36-46), complain alike of the action of the court in refusing to enter judgment for the defendant on the motion which we have hereinabove set out. The ground of complaint in effect urged in each of these assignments is that the undisputed proof shows that H. C. Clark, at the date of the contract of sale between Wilkin and Armstrong, and at the date of

the execution of the deed by the former to the latter, had no such interest in the land as was subject to execution or as was subject to the judgment lien.

It will be noted that the court below was requested to enter a judgment upon the findings of the jury, and in this court the assignments referred to urge error on the part of the trial court in refusing to grant this motion, not because the findings would not support the judgment, but because the evidence would not support the finding of ownership in Clark. Hence it is manifest that the defendant is seeking to avail himself of an objection here which was not even called to the attention of the court in the motion the overruling of which is made the subject of the assignments of error now considered. The court below was not asked in this motion to set aside these findings because they were contrary to the evidence, but its attention was invited to the sufficiency of the findings themselves as a basis for the judgment. Under these circumstances, we feel constrained to decline to consider the sufficiency of the evidence to support the finding of the jury to the effect that Clark was the real owner of the land at the date of its purchase from Wilkin.

2. The first, second, fourth, sixth, seventh, tenth, sixteenth, seventeenth, eighteenth, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, and twenty-ninth assignments of error complain of the action of the court in different aspects, but with reference to one issue, viz., the knowledge on the part of Armstrong at the time of his purchase of the property of the fraudulent intent which actuated Clark in the transaction.

It will be noted that there are two branches to the title asserted by the appellee, viz., that arising out of the execution sale had by virtue of the judgment duly abstracted, indexed, and recorded at the time of the purchase by Armstrong in December, 1893, and that arising out of the execution sale under the judgment obtained October 11, 1897. The second branch of the title alone involves the question of the participation by Armstrong in the fraudulent intent which may have actuated Clark in the disposition of this property. Under the first branch of the title, as it rests upon a judgment lien against the property of Clark, it follows that, if it be true that Clark at the time of the conveyance to Armstrong was the real owner of the property, and that Armstrong knew this fact, the plaintiff should prevail, without reference to the question whether Clark was moved by a fraudulent purpose in the transaction, or whether Armstrong participated in that purpose. In other words, it is quite manifest that, under the findings of the jury, the plaintiff must prevail under the first branch of the title asserted by him, unless defeated by the statute of three years' limitation. Hence, in view of our conclusion hereinafter stated upon the first branch, we regard as immaterial any error which may have been committed in connection with the second branch and presented in the assignments last above mentioned; and these assignments are overruled.

3.   The thirtieth and thirteenth assignments of error complain that the court erred in failing and refusing to charge the jury in respect to the law of the case, and in failing to grant the special charges 1, 2, 3, 4, 5, 6, and 7.   These charges are not set out in the appellant's brief.   We can not assume that they were material.

The amended article 1331 of the Revised Statutes prescribes that. when a case is submitted on special issues, "the failure to submit any issue shall not be deemed a ground for reversal of the judgment upon appeal or writ of error, unless its submission has been requested in writing by the party complaining of the judgment."   It was incumbent upon the appellant to request the submission of proper special issues, if there was an omission by the court in this respect; and it is further incumbent upon him to state in his brief what these issues were, and the form in which they were presented, so that this court might be enabled to pass upon their materiality.   This the appellant has failed to do. These assignments are hence overruled.

4.   The fifth, eighth, ninth, and eleventh assignments of error are presented together, and complain of the action of the court in failing to submit to the jury the issue of three years' limitation, and in failing to enter judgment in favor of the defendant on the findings of the jury, on the ground that the undisputed evidence showed that the plaintiff's cause of action was barred by the aforesaid statute of limitations.   We are unable to sustain these assignments.   Under the terms of the article above quoted, we are of opinion that the defendant should have requested a submission of this issue, if deemed by him to be material.   Railway v. Gay, 86 Texas, 609.   We are not prepared to hold that the findings of the jury would not support the judgment rendered.   As indicated in the outset, the motion to enter judgment did not raise the sufficiency of the evidence to support the findings.

Our conclusion is that, without reference to the second branch of the plaintiff's title, the findings of the jury justified the judgment under the first.   We fail to find merit in the appellant's case as here presented, and we feel constrained to order an affirmance of the judgment.

*Affirmed.*

### ON MOTION FOR REHEARING.

STEPHENS, ASSOCIATE JUSTICE.—As to the complaint made of our conclusions of fact, it may not be amiss to add, though it would seem to be quite apparent from the opinion already filed, that the verdict of the jury (with the undisputed facts) necessitated these conclusions, in the absence of errors assigned to the action of the trial court in refusing to set aside the verdict and grant a new trial.

From the findings of the jury, then, that Clark was the real owner of the property while the title stood in the name of Wilkin, and that appellant had knowledge, both actual and constructive, of that fact when he accepted his deed from Wilkin, followed unavoidably the conclusions of

fact now complained of, including the statement that both parties claimed under Clark as the common source of title. We did not mean to hold that appellant pleaded or otherwise admitted a claim under Clark, for, on the contrary, his contention was that no title, legal or equitable, had ever been in Clark.

As to our conclusions of law, counsel wholly misconstrue them in so far as they state the grounds upon which we are constrained to accept the verdict as conclusive on the facts. It has become a well established rule of practice in this State that to have a verdict set aside on appeal for want of evidence to support it, a motion for new trial must first be made in the trial court, in which must be distinctly specified the ground of complaint, and if this motion is overruled, not only must error be assigned on appeal to this action, but also upon the very ground specified in the motion for new trial. Of the many assignments of error quoted in appellant's brief, not one is pointed out in the motion for rehearing that complains of the court's action in overruling the motion for a new trial. Our attention is called to the fact, which did not escape us on the original hearing, that a motion for new trial was made and overruled in the trial court, but as no error has been assigned to its being overruled, that action of the court is to be treated here as having been acquiesced in, since errors not assigned are waived.

We did not, then, mean to hold or intimate, as appellant's counsel seem to think, that the motion for a judgment in his favor on, or notwithstanding, the verdict operated a forfeiture of his right to claim a new trial. Besides, the assignment made in the motion for new trial, as quoted in this motion for rehearing, would be too general, if offered as an assignment in this court. Indeed, it would strain the record to treat it as a part of the motion for new trial.

Upon the further question of practice, affecting alone the defense of limitation, we think the case already cited is conclusive, that of Gay v. Railway, 86 Texas, 609, in which Chief Justice Stayton, near the end of the opinion, collated the previous decisions as establishing the rule that unless a defendant who both pleads and proves limitation requests the trial court to submit such defense to the jury, the omission is not available on appeal, though the plea be sustained by the undisputed evidence. The late amendment of the statute affecting special verdicts is not at all at variance with this ruling, but in line with it. On account of these views, we did not undertake to decide, as we did not feel warranted in so doing, the limitation question on its merits.

Counsel for appellant now raise for the first time the objection that appellee, if not precluded by limitation, was still not entitled to recover upon the first branch of his title, which depended upon a judgment lien, because the record fails to show the issuance of an execution within a year after the rendition of the judgment under which the lien was claimed, citing Evans v. Frizby, 84 Texas, 341, which goes far to sustain the contention that it was incumbent on appellee to show such issuance of execution. There is this difference, however, between the two cases.

In that case, when the abstract of the judgment went to record, the year next following the rendition of the judgment had already elapsed, while in this it had not. That is, in the case cited, the proof failed to show that the lien had ever existed, while in the case at bar the proof showed it once to have existed, but failed to show whether or not it had been subsequently lost.

But it may be argued that appellee consequently failed to show its continued existence up to the date of the sale. Article 3289 of the Revised Statutes declares when and upon what the lien shall take effect, and the succeeding article declares that it shall continue for ten years unless the plaintiff shall fail to have execution issued within twelve months from the rendition of the judgment, "in which case said lien shall cease to exist." Whether, after the plaintiff has affirmatively shown the existence of the lien in the first instance, he must go further and show its continued existence until merged in his title, or whether that will be presumed, in the absence of proof by the defendant to the contrary, is the question.

Unless it is too late now to raise this question, as contended by appellee, we are rather inclined to the opinion that this ground of the motion for rehearing is well taken. If the verdict had included this issue, appellant would not be entitled to complain for the first time in this court of such omission in the proof. But as the special verdict did not find facts showing the existence of the judgment lien, we are compelled to go to the record for such facts, in order to find a basis for the judgment, in so far as it rests on that branch of appellee's title. True, the amended special verdict statute above referred to provides that, "upon appeal, or writ of error, an issue not submitted and not requested by a party to the cause shall be deemed as found by the court, in such manner as to support the judgment," but with this important qualification added: "Provided there be evidence to sustain such a finding."

We are not required, then, by this statute as amended either to make a finding ourselves or to ascribe to the trial court a finding without evidence, and certain it is that before the statute was amended we could not have done so, for a special verdict was then fatally defective if it failed to find every fact necessary to support the judgment. Such defect was then treated as error apparent on the face of the record, and being of that character, might be called to the attention of the court for the first time on appeal or be noticed by the court as fundamental, though not called to its attention. We do not understand the amendment to have changed this rule, except in cases where every fact essential to support the judgment may be found in the record, though not included in the special verdict. We have concluded, therefore, to examine the assignments of error not considered on the original hearing, affecting the second branch of appellee's title, the validity of which depended upon whether, assuming that Clark was the real owner of the property, as conclusively found by the jury, the conveyance to Armstrong was fraudulent and void.

The case made by the special verdict (which is set out in full in appellant's printed argument attached to his motion for rehearing), when read in the light of or supplemented by the undisputed facts, was about as follows: Clark was entirely insolvent, owing various large debts, which he was unable to pay, all of which was well known to Armstrong when he bargained with Clark for the property and when he accepted the deed from Wilkin and paid the purchase price, which was about the full value of the property, and consisted in large part of money and negotiable promissory notes. Armstrong did not by the terms of the trade or otherwise undertake to have the money and negotiable notes delivered by him to Wilkin for Clark applied to the payment of Clark's debts, but left this to the discretion of Clark, who immediately converted the notes into money and thereafter used the cash received when the deed was delivered, as well as the proceeds of the notes, mainly in paying and compromising his debts, the rest (the proof failing to show how much) being used by him to live upon. He paid some of his debts in full and compromised some for (much) less than face value, and this he intended to do at the time of the sale.

It will be noted that the issue was not distinctly submitted to the jury as one of fact whether Clark intended to defraud his creditors in the sale to Armstrong, nor whether Armstrong had notice of that intention, the issue of fraud being determined by the court from the facts above stated and substantially found by the jury, of which action appellant in various forms complains. The question then is, did the case so made have such a necessary tendency to hinder, delay, and defraud creditors as to warrant the court in declaring the conveyance to Armstrong void under the statute of frauds?

Tested by the enunciations of our Supreme Court in Seligson v. Brown, 61 Texas, 180; Elser v. Graber, 69 Texas, 225, and that line of cases, we must hold that it did. For a discussion of the question we refer to the opinions in those cases. We consequently find no merit in the remaining assignments of error, and though appellee may not have been entitled to an affirmance of the judgment upon the first branch of his title, he was upon the second.

The motion for rehearing will therefore be overruled.

*Overruled.*

Writ of error refused.