## GUARANTY STATE BANK & TRUST CO. et al. v. MAXWELL et al. (No. 8164.)

Court of Civil Appeals of Texas. San Antonio. March 6, 1929.

Rehearing Denied April 3, 1929.

Lee Wallace, of Kerrville, and J. L. Gammon, of Waxahachie, for appellants.

C. M. Supple, of Waxahachie, and H. C. Geddie, of Kerrville, for appellees.

FLY, C. J. This is a suit by appellees to restrain the sale of three certain tracts of land, containing, respectively, 70, 80, and 160 acres, and aggregating 310 acres of land, one-half of which was claimed by Mrs. Maxwell, in Kerr county, under an order of sale issued out of a certain case styled Guaranty State Bank & Trust Company v. Mrs. R. J. Lawrence, in the district court of Ellis county.

The order of sale was issued by virtue of a judgment in the case named, for $8,970, with foreclosure of an attachment lien on the three tracts of land herein mentioned. J. T. Moore, sheriff of Kerr county, had levied on the land under authority of the order of sale and advertised the same for sale.

Mrs. Maxwell alleged that she was the owner of the land in her own separate right. A temporary writ of injunction was granted "to remain in force until otherwise ordered." The cause was submitted to a jury through eight special issues, only the first being answered in following directions of the court. It had been alleged that a deed to the land had been executed by Mrs. R. J. Lawrence to Mrs. Elizabeth M. Maxwell for the fraudulent purpose of placing it beyond the reach of the creditors of Mrs. Lawrence. The jury answered that the deed was not executed with such intent, and upon that finding the injunction was perpetuated, restraining the sale of the land as against the First State Bank & Trust Company of Waxahachie, which had entered the suit, and the Guaranty State Bank & Trust Company and J. T. Moore, sheriff of Kerr county, and also an order removing all cloud from the title to the lands held by Mrs. Maxwell arising from said Ellis county judgment, and levy under the order of sale.

On June 2, 1925, the Guaranty State Bank & Trust Company of Waxahachie recovered a judgment in Ellis county, against Mrs. R. J. Lawrence, a feme sole, for $8,970.02, as evidenced by three promissory notes executed by her, and at the same time there was a foreclosure of an attachment lien on the land in controversy, which lien had been acquired by the levy of a writ of attachment issued in the cause on February 20, 1925. On January 24, 1925, while the said suit was pending in the district court of Ellis county, Mrs. Lawrence conveyed to her sister, Mrs. Rhoda Jane Maxwell, of Lamar county, Tex., the land in question for a recited consideration of $10. Mrs. Maxwell and her husband and Mrs. Lawrence swore that Mrs. Lawrence was indebted to Dr. Maxwell in the sum of $500, also $300 cash paid to her and $300 which Mrs. Lawrence had borrowed from her sister to pay Will Moore at Waxahachie, all of which made $1,100, and the balance of the consideration was, according to Mrs. Maxwell, "$500.00 which I was to pay her as she needed it." So it seems that $500 of the purchase money went to pay debts to Dr. Maxwell and $300 to Will Moore, and the remaining $500 was to be paid at some indefinite time dependent on the necessities of Mrs. Lawrence. She only received $300 and $800 receipted for debts, with a promise of $500 in the uncertain future. No note or other written evidence of the existence of the $500 was given. There was only one witness who swore that the 155 acres of land owned by Mrs. Lawrence was worth only what she received and was promised for it; the next lowest valuation being $1,860, while three others valued the land at from $4,000 to $5,000. The land lies on the Johnson fork of the Guadalupe river, about 12 miles from Kerrville on the public highway to Junction. The preponderance of the evidence showed that the property was worth a sum largely in excess of the debts of Moore and Dr. Maxwell and the cash paid to Mrs. Lawrence in the sum of $300. The $500 was to be paid at some indefinite time and was not evidenced by any writing. At least $800 of the $1,600, or one-half, was not used to pay debts.

It is not pretended that the $300 paid to Mrs. Lawrence was intended to be used by her on her debts, nor that the $500, if she ever received it, was to be so used. No one claims that Mrs. Maxwell attempted in any way to have the cash and deferred payment applied on debts which she knew, or should have known, her sister owed. The question of the intention of Mrs. Lawrence and Mrs. Maxwell cannot control, and the court erred in basing a finding for appellees on the intent alone of Mrs. Lawrence. Seligson v. Brown, 61 Tex. 180; Lambeth v. McClinton, 65 Tex. 108. The mere intention can have no effect standing alone in determining whether a conveyance is lawful or not. A creditor can lawfully receive from his debtor indebted to others, more property than is necessary to satisfy his debt, provided he is bound by his contract of sale to see that the excess of the purchase money over his debt is applied to the payment of other debts. Ellis v. Valentine, 65 Tex. 532.

It is held in Elser v. Graber, 69 Tex. 222, 6 S. W. 560: "It is the well settled law of this court, that a creditor may lawfully receive of his debtor, a sufficient amount of his property to pay his debt, though the latter be in failing circumstances, and this be known to the creditor, and although the necessary result is to hinder and delay other creditors—provided he receive no more than is reasonably sufficient to satisfy his claim." The facts in that case are somewhat similar to the facts in this case, where a creditor received property of value considerably in excess of his debt, with no obligation to pay the excess to other creditors. In the case now before this court Mrs. Maxwell, not only received sufficient property to pay her husband's debt and that of Moore, but she let her sister have $300 in cash and promised to pay her $500 as she might need it. The necessary consequence of that transaction was to hinder and delay other creditors as to at least $800 and probably considerably more. As said in Gallagher v. Goldfrank, 75 Tex. 562, 12 S. W. 964: "This court has repeatedly held that although a creditor may accept from a debtor in failing circumstances property in payment of his debt, if not more than reasonably sufficient in value to discharge it, yet if he receives a transfer of property exceeding in value the amount of his debt and pays cash or gives a negotiable instrument for the excess, the transaction is fraudulent."

As before stated, it does not matter what the motive of the parties may have been. As held in Paddock v. Jackson, 16 Tex. Civ. App.

655, 41 S. W. 700: "The absence of a bad motive does not relieve the transaction of its fraudulent character. The parties are held to have contemplated the consequences of their act, and this constitutes the fraudulent intent which vitiates the conveyance." See, also, Duveneck v. Kutzer, 17 Tex. Civ. App. 577, 43 S. W. 541; Armstrong v. Elliott, 20 Tex. Civ. App. 41, 48 S. W. 605, 49 S. W. 635. The facts showed legal fraud, no matter how innocent the intentions of the parties may have been.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

■ The case was made to turn upon the intent of the parties in the transfer of the property, and the jury found that there was no fraudulent intent in the transaction. Mrs. Lawrence and Mrs. Maxwell are sisters, and the facts indicate that Mrs. Maxwell, when she accepted a transfer from her sister of the land in controversy, knew that her sister was insolvent. All of the facts point to this conclusion. Mrs. Maxwell did not pay value for the land, and it was uncontradicted that only $800 was claimed to have been paid to creditors and the larger portion of that to the husband of the sister of the vendor. At least one-half of the purchase money was not paid to creditors, but, if paid at all, was paid to Mrs. Lawrence. Under all Texas authorities, this was fraud on its face, and the court should so have declared as a matter of law. Mrs. Lawrence knew that she was indebted to other parties and could not have acted in good faith, and Mrs. Maxwell must have known the same facts.

It is in effect admitted that the law as declared in our original opinion was sustained by the cases cited in the opinion, but it is claimed that they are overruled by the decision in Sanger Bros. v. Colbert, 84 Tex. 668, 19 S. W. 863. In that case the purchaser was a creditor, who had paid full value for the land, and the purchase money for the property was paid by the vendor to his creditors. That is an entirely different case from this, and there was nothing said in that case that is in conflict with Seligson v. Brown, 61 Tex. 180; Lambeth v. McClinton, 65 Tex. 108; Ellis v. Valentine, 65 Tex. 532; Elser v: Graber, 69 Tex. 222, 6 S. W. 560; and Gallagher v. Goldfrank, 75 Tex. 562, 12 S. W. 964, which are cited in the former opinion and which fully sustain it. Citing the case of Gallagher v. Goldfrank, the Supreme Court held in Coughran v. Edmondson, 106 Tex. 540, 172 S. W. 1106: "A creditor of an insolvent debtor may receive property for his debt if not more than reasonably sufficient in value to discharge it, but where the value of the property materially exceeds the debt, the transaction is deemed fraudulent in law, since its necessary effect is to place the surplus beyond the reach of creditors." The case of Paddock v. Jackson, 16 Tex. Civ. App. 655, 41 S. W. 700, was the case of a purchaser from an insolvent vendor. The judgment of the trial court was reversed and judgment rendered against the purchaser, and a writ of error was refused by the Supreme Court. The court said: "We cannot agree with the trial judge, that Jackson can be treated as an innocent purchaser without notice of any fraudulent intent on the part of Ayers, for that is the view upon which the judgment is based. In our opinion, the evidence conclusively shows that, when the sale was made Ayers was insolvent, and that the facts actually within Jackson's knowledge showed this to be the fact. Ayers had been unable to meet the debt secured by the deed of trust to Brown Bros., and his lands had been sold. Judgment had been obtained against him by those parties and other lands sold, and he was unable to redeem it or pay the balance, and had to apply to Jackson for assistance, which was given upon the security of the land. He stated at the very time of the sale that he wanted the proceeds of the property with which to pay debts. These facts were certainly at least prima facie evidence of insolvency." The facts in that case were not near so strong against the purchaser as are the facts of this case against Mrs. Maxwell. She knew that her sister was in debt, she knew that the consideration for the land was utterly inadequate, and she could not have been a purchaser in good faith for value.

There is no merit in the motion for rehearing, and it is overruled.